## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, et al.,<br><br>       Debtor. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS,<br><br>       Plaintiff,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, LLC, YUCAIPA AMERICAN MANAGEMENT, LLC, AMERICAN AIRLINES MASTER FIXED BENEFIT PENSION PLAN TRUST, AMERICAN PRIVATE EQUITY PARTNERS II, LP, AUTOMOTIVE MACHINISTS PENSION TRUST, BOARD OF FIRE AND POLICE PENSION COMMISSIONERS OF THE CITY OF LOS ANGELES, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, COLLER PARTNERS 702 LP INCORPORATED, CLOUSE S.A., CONSOLIDATED RETIREMENT FUND, IAM PRIVATE EQUITY, LLC, ILGWU DEATH BENEFIT FUND 4, INTERNATIONAL SIF SICAV SA, LOCALS 302 & 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS – EMPLOYERS CONSTRUCTION INDUSTRY RETIREMENT TRUST, LOS ANGELES CITY EMPLOYEES' RETIREMENT SYSTEM, NATIONAL RETIREMENT FUND, NEW MEXICO STATE INVESTMENT COUNCIL, NEW MEXICO STATE INVESTMENT COUNCIL LAND GRANT PERMANENT FUND, NEW MEXICO STATE INVESTMENT COUNCIL SEVERANCE TAX PERMANENT FUND, NEW YORK CITY EMPLOYEES' | Adv. Pro. No. 21-51179 |

RETIREMENT SYSTEM, NEW YORK CITY FIRE
DEPARTMENT PENSION FUND, NEW YORK CITY
POLICE PENSION FUND, NORTHEAST CARPENTERS
PENSION FUND, PACIFIC COAST ROOFERS
PENSION PLAN, SANBA II INVESTMENT
AUTHORITY, STATE STREET BANK AND TRUST
COMPANY (AS TRUSTEE ON BEHALF OF
AMERICAN AIRLINES MASTER FIXED BENEFIT
PENSION PLAN TRUST); STEAMSHIP TRADE
ASSOCIATION OF BALTIMORE, INC. –
INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION (AFL- CIO) PENSION FUND,
TEACHERS' RETIREMENT SYSTEM OF THE CITY OF
NEW YORK, UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION PENSION PLAN
FOR EMPLOYEES, WESTERN CONFERENCE OF
TEAMSTERS PENSION TRUST

        Defendants.

## LP DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## MOTION TO WITHDRAW THE REFERENCE PURSUANT TO
## 28 U.S.C. § 157(d) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011

**Dated: March 4, 2022**

**POTTER ANDERSON & CORROON LLP**
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  csamis@potteranderson.com
      kgood@potteranderson.com

**LOWENSTEIN SANDLER LLP**
Michael Etkin, Esq. (*pro hac vice*)
Andrew Behlmann, Esq. (*pro hac vice*)
Nicole Fulfree, Esq. (*pro hac vice*)
Colleen Maker, Esq. (*pro hac vice*)
One Lowenstein Drive
Roseland, NJ  07068
Telephone:  (973) 597-2500
Email:    metkin@lowenstein.com
      abehlmann@lowenstein.com
      nfulfree@lowenstein.com
      cmaker@lowenstein.com

*Counsel to the LP Defendants*

41397/2
03/04/2022 210848187.13

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ................................................................................ ii

SUMMARY OF ARGUMENT ........................................................................... 1

JURISDICTION ................................................................................................. 2

PROCEDURAL HISTORY AND BACKGROUND ......................................... 2

    A.    The LP Defendants ............................................................... 2

    B.    Allied's Georgia Chapter 11 Cases ..................................... 2

    C.    Allied's Delaware Chapter 11 Cases and the Yucaipa Adversary Proceedings ......................................................... 4

    D.    The Limited Partner Adversary Proceeding ........................ 5

ARGUMENT ...................................................................................................... 6

I.    THE COURT SHOULD WITHDRAW THE REFERENCE OF THE ADVERSARY PROCEEDING. ............................................................. 6

    A.    Mandatory Withdrawal of the Reference is Required ......... 7

    B.    Cause Exists for the Permissive Withdrawal of the Adversary Proceeding ......................................................... 11

        1.    The Adversary Proceeding Involves Only Non-Core Claims .................... 12

        2.    Withdrawing the Reference Will Ensure Uniform Bankruptcy Administration ......................................... 16

        3.    Withdrawing the Reference is Not an Attempt at Forum Shopping ......................................................... 16

        4.    Withdrawal Will Promote Economical Use of Bankruptcy Court Resources ....................................... 17

        5.    Withdrawal Will Expedite the Bankruptcy Process ................................. 19

        6.    The Request to Withdraw is Timely ...................... 20

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 5171 Campbells Land Co.*,
No. 1:21-cv-216, 2022 WL 267357 (W.D. Pa. Jan. 28, 2022) ................................................14

*In re AgFeed USA, LLC*,
565 B.R. 556 (D. Del. 2016) ..........................................................................................14, 20

*In re Big V. Holding Corp.*,
No. 00-04372 (RTL), 2002 WL 1482392 (D. Del. July 11, 2002) .........................................18

*Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*,
372 F.3d 154 (3d Cir. 2004).................................................................................................12

*Boggs v. Boggs*,
520 U.S. 833 (1997).............................................................................................................10

*Chorches for the Estate of Scott Cable Communications, Inc. v. U.S. Bank Nat'l*
*Assoc.*,
No. 11-00105 (KJC), 2014 WL 5280002 (Bankr. D. Del. Oct. 15, 2014) .............................15

*In re Columbia Gas System, Inc.*,
134 B.R. 808 (D. Del. 1991)...............................................................................................7, 8

*In re Continental Airlines*,
138 B.R. 442 (D. Del. 1992)...................................................................................................7

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
176 F.3d 187 (3d Cir. 1999).................................................................................................14

*Executive Benefits Ins. Agency v. Arkison*,
134 S.Ct. 2165 (2014).........................................................................................................15

*In re Gruppo Antico, Inc.*,
No. 02-13283 (PJW), 2005 WL 3654215 (D. Del. July 1, 2005)..........................................18

*Gumport v. Growth Fin. Corp. (In re Transcon Lines)*,
121 B.R. 837 (C.D. Cal. 1990) ............................................................................................18

*In re Holman*,
325 B.R. 569 (E.D. Ky. 2005) .............................................................................................11

*In re Homeland Stores, Inc.*,
204 B.R. 427 (D. Del. 1997)....................................................................................... passim

*In re Kiefer*,
   276 B.R. 196 (E.D. Mich. 2002) ............................................................................9

*N.Y. State Conference of Blue Cross & Blue Shield Tribune Plans v. Travelers
   Ins. Co.*,
   514 U.S. 645 (1995) ............................................................................10

*In re NDEP Corp.*,
   203 B.R. 905 (D. Del. 1996) ............................................................................12, 18

*In re Nortel Networks, Inc.*,
   539 B.R. 704 (D. Del. 2015) ............................................................................7, 11

*In re Petition of McMahon*,
   222 B.R. 205 (S.D.N.Y 1998) ............................................................................16

*In re Pruitt*,
   910 F.2d 1160 (3d Cir. 1990) ............................................................................12

*In re Schlein*,
   188 B.R. 13 (E.D. Pa. 1995) ............................................................................20

*In re SemCrude L.P.*,
   No. 11-1174-SLR, 2012 WL 5554819 (D. Del. Nov. 15, 2012) ............................................................................12

*Steiner Elec. Co. v. Central States, Southwest and Southwest Area Pension Fund*,
   No. 95 C 687, 1995 WL 399517 (N.D. Ill. June 29, 1995) ............................................................................9, 16

*Stern v. Marshall*,
   131 S.Ct. 2594 (2011) ............................................................................15

*U.S. v. Delfasco, Inc.*,
   409 B.R. 704 (D. Del. 2009) ............................................................................7, 10

*In re U.S.A. Floral Prods., Inc.*,
   No. 01-1230 (MFW), 2005 WL 3657096 (D. Del. July 1, 2005) ............................................................................17, 20

*In re Uni Marts, LLC*,
   No. 09-164-JJF, 2009 WL 1631821 (D. Del. June 11, 2009) ............................................................................18

*In re Visteon Corp*,
   No. 09-11786 (CSS), 2011 WL 1791302 (D. Del. May 9, 2011) ............................................................................11, 12, 16, 17

*In re Winstar Commc'ns, Inc.*,
   321 B.R. 761 (D. Del. 2005) ............................................................................12

*Youngman v. Yucaipa American Alliance Fund I, LLC, et al.*,
   Case No. 21STCV37137 (Cal. Super Ct.) ............................................................................14

*Yucaipa Am. All. Fund I, LP v. Ehrlich*,
    716 F. App'x 73 (3d Cir. 2017) ..................................................................................3

## Statutes

28 U.S.C. § 157 ........................................................................................................ passim

28 U.S.C. § 1334 ......................................................................................................6, 12

29 U.S.C. § 1056(d)(1) ....................................................................................................8

29 U.S.C. § 1144(a) .......................................................................................................10

11 U.S.C. § 363 ................................................................................................................4

11 U.S.C. § 544 ........................................................................................................14, 15

U.F.T.A., 6 Del. C. §§ 1304(a), 1305(a) .........................................................................6

## Rules

Federal Rules of Bankruptcy Procedure Rule 5011 ..........................................................1

Local Bankruptcy Rules Rule 5011-1 ...........................................................................1, 2

## Regulations

P.L.R. 9109051 ................................................................................................................8

The limited partner defendants listed on **Exhibit A** (the "LP Defendants") in this adversary proceeding (the "Adversary Proceeding") brought by Catherine E. Youngman, in her capacity as the Litigation Trustee (the "Litigation Trustee") for ASHINC Corp. and its debtor affiliates ("Allied"), respectfully submit this brief in support of their motion to withdraw the bankruptcy reference (the "Motion") of the Adversary Proceeding pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5011-1 of the Local Bankruptcy Rules (the "Local Bankruptcy Rules") and respectfully state as follows:

## SUMMARY OF ARGUMENT

1.      The reference of this Adversary Proceeding to the Delaware Bankruptcy Court (as defined below) pursuant to the District Court's Amended Standing Order of Reference dated February 29, 2012 (Bankr. D. Del.) (Sleet, C.J.) (the "Standing Order") is subject to mandatory withdrawal under 28 U.S.C. § 157(d), and cause also exists warranting permissive withdrawal.

2.      The bankruptcy reference is subject to mandatory withdrawal because resolution of the Adversary Proceeding requires the substantial consideration of the Employee Retirement Income Security Act of 1974 ("ERISA"), a federal statutory scheme.  Twelve LP Defendants are pension and benefits plans subject to ERISA and related regulations, and intend to assert defenses under ERISA to the claims set forth in the Adversary Proceeding.  In a previous case in this District, under very similar facts, this Court held that where substantial consideration of ERISA law is necessary to the adjudication of a proceeding, withdrawal of the bankruptcy reference is mandatory under 28 U.S.C. § 157(d) because consideration of such issues is the province of the District Court, not the Delaware Bankruptcy Court.

3.      "Cause" also exists warranting permissive withdrawal of the reference.  The purely state law claims that the Litigation Trustee has asserted in her capacity as a judgment creditor do

not relate to or arise under the chapter 11 case. Such claims are premised entirely on facts that allegedly occurred years after confirmation of Allied's plan of liquidation. All of the claims asserted by the Litigation Trustee are non-core claims arising under state law, for which the LP Defendants (who were not creditors in Allied's bankruptcy case) are entitled to a jury trial. Moreover, the LP Defendants do not consent to Delaware Bankruptcy Court adjudication. Thus, this Court should exercise its discretion to withdraw the reference of the Adversary Proceeding.

## JURISDICTION

4.      The District Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(d) and 1334(b), Bankruptcy Rule 5011, and Local Bankruptcy Rule 5011-1.

## PROCEDURAL HISTORY AND BACKGROUND[1]

### A.      The LP Defendants

5.      The LP Defendants are limited partners of Yucaipa American Alliance Fund I, L.P. ("Fund I") and/or Yucaipa American Alliance (Parallel) Fund I, L.P. (the "Parallel Fund," and together with Fund I, "Yucaipa") pursuant to limited partnership agreements entered into as of March 4, 2005 (as amended from time to time, the "LPAs").

### B.      Allied's Georgia Chapter 11 Cases

6.      In July 2005, Allied filed a chapter 11 petition (the "Georgia Chapter 11") in the Northern District of Georgia. Compl. ¶¶ 54–55. Yucaipa's initial investment in Allied in or around May 2006 totaled approximately $95 million. In connection with the plan of reorganization confirmed in the Georgia Chapter 11, Yucaipa's initial investment was converted into 67% of

---

[1]    The factual background contained herein is largely derived from the allegations in the Complaint in this Adversary Proceeding and other documents in the record in the Delaware Chapter 11 Case and the Yucaipa Adversary Proceedings (each as defined below) and is included herein for the purpose of providing the Court with necessary context. The LP Defendants' firsthand knowledge of many of the historical events referenced herein is limited, and the inclusion of such background shall not be deemed an admission by the LP Defendants, who reserve all rights in this respect.

reorganized Allied's equity, and Yucaipa obtained the right to appoint a majority of the members of reorganized Allied's Board.  Compl. ¶¶ 57–58.

7.    In the Georgia Chapter 11, Allied obtained exit financing comprised, in part, of a $265 million first lien facility (the "First Lien Facility") governed by a First Lien Credit Agreement (the "FLCA").  Compl. ¶ 60.  BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P. (collectively, "BD/S") were among the lenders (the "First Lien Lenders") thereunder, holding a minority stake in Allied's secured first-lien debt under the FLCA (the "First Lien Debt").[2]  According to the Complaint, the FLCA originally prohibited the First Lien Lenders from assigning any portion of the First Lien Debt to Yucaipa.  Compl. ¶ 55, 64. The FLCA also provided that only the "Requisite Lender"—one or more lenders holding more than 50% of the First Lien Debt—was entitled to take certain actions on behalf of all First Lien Lenders.  Compl. ¶ 64.  In April 2008, Allied and the First Lien Lenders entered into an amendment to the FLCA (the "Third Amendment") that, among other things, allowed Yucaipa to acquire a limited amount of First Lien Debt, but required Yucaipa to make a capital contribution to Allied in connection therewith (the "Capital Contribution Provision").  Compl. ¶ 67.

8.    In February 2009, ComVest Investment Partners ("ComVest") acquired approximately 54% of Allied's First Lien Debt and became the Requisite Lender.  On August 21, 2009, Yucaipa and ComVest entered into a Loan Purchase Agreement pursuant to which Yucaipa purchased ComVest's $145.1 million (principal amount) of First Lien Debt for approximately $43 million. Compl. ¶ 80.  A "Fourth Amendment" to the FLCA was executed the same day.  *Id.*

---

[2]    *See Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 F. App'x 73, 74 (3d Cir. 2017) ("In May 2007, Allied borrowed $265 million of first lien debt from numerous lenders pursuant to a credit agreement. BD/S were among the lenders, and held a minority stake in the first lien debt.").

**C.    Allied's Delaware Chapter 11 Cases and the Yucaipa Adversary Proceedings**

9.    On May 17, 2012, BD/S filed an involuntary chapter 11 petition against Allied in the U.S. Bankruptcy Court for the District of Delaware (the "<u>Delaware Bankruptcy Court</u>").  Allied subsequently consented to the entry of orders for relief (the "<u>Delaware Chapter 11 Case</u>").[3]  In September 2013, the Delaware Bankruptcy Court approved the sale of substantially all of Allied's assets to Jack Cooper Transport pursuant to section 363 of the Bankruptcy Code.

10.    During the Delaware Chapter 11 Case, two adversary proceedings (the "<u>Yucaipa Adversary Proceedings</u>") were filed by (a) the Official Committee of Unsecured Creditors of Allied (the "<u>Committee</u>"), asserting estate claims against Yucaipa and former Allied directors, and (b) BD/S, in their individual capacities and as agents for the First Lien Lenders, asserting direct claims against Yucaipa, former Allied directors, and Ronald Burkle.[4]  Compl. ¶ 95.  The Yucaipa Adversary Proceedings sought damages for, among other things, Yucaipa's alleged breach of the Capital Contribution Provision, recovery and avoidance of millions of dollars of allegedly fraudulent transfers, damages for Yucaipa's alleged breaches of fiduciary duties, and equitable subordination of Yucaipa's portion of the First Lien Debt.  Compl. ¶ 96.

11.    Through an order of the Delaware Bankruptcy Court (the "<u>Confirmation Order</u>")[5] confirming Allied's chapter 11 plan (the "<u>Plan</u>"),[6] which became effective on December 20, 2016, Catherine E. Youngman was appointed as Litigation Trustee and Plan Administrator in the

---

[3]  Citations to "Del. Chapter 11, D.I. __" refer to ECF documents filed in the Delaware Chapter 11 Case, Lead Case No. 12-11564 (Bankr. D. Del.).

[4]  The Yucaipa Adversary Proceedings are administered under Del. Adv. Pro. No. 13-50530. Citations to "Yucaipa Adv. Pro., D.I. __" refer to ECF documents filed in the Yucaipa Adversary Proceedings.

[5]  Del. Chapter 11, D.I. 3383.

[6]  Del. Chapter 11, D.I. 3360.

Delaware Chapter 11 Case (see Confirmation Order ¶¶ 20, 22) and was substituted as plaintiff in both the Estate and Lender Actions, to be prosecuted jointly in a single action.[7]

12.     On May 4, 2021, the Delaware Bankruptcy Court entered an Opinion and Order (the "2021 SJ Opinion")[8] granting in part and denying in part motions for summary judgment filed by the Litigation Trustee and Yucaipa.  On June 23, 2021, the Delaware Bankruptcy Court entered judgment against Yucaipa pursuant to the 2021 SJ Opinion, awarding (a) damages for breach of the Capital Contribution Provision in the amount of $132,431,957 (including more than $60 million of pre-judgment interest), plus post-judgment interest, and (b) avoidance and recovery of certain fraudulent transfers made by Allied to Yucaipa (the "Judgment").[9]  The primary claims remaining for trial in the Yucaipa Adversary Proceedings include equitable subordination of Yucaipa's First Lien Debt and alleged breach of fiduciary duty.

### D.     The Limited Partner Adversary Proceeding

13.     On October 6, 2021, the Litigation Trustee filed an adversary complaint (the "Complaint") against 31 defendants (the "Defendants"): Yucaipa American Alliance Fund I, LLC (the "General Partner"), Yucaipa American Management LLC, the 26 LP Defendants, and certain other limited partners of Yucaipa.  Between October 6, 2021 and October 14, 2021, the Litigation Trustee filed an additional eight actions against certain of the Defendants based on the same allegations and theories as the Complaint in the U.S. District Court for the District of Columbia and in California, Maryland, Massachusetts, New Jersey, New Mexico, New York, and Washington state courts.

---

[7]   *See Order Substituting Plaintiffs and Amending Captions in Above-Referenced Adversary Proceedings to Reflect Litigation Trustee as Plaintiff.*  Yucaipa Adv. Pro., D.I. 415.
[8]   Yucaipa Adv. Pro., D.I. 825, 826.
[9]   Yucaipa Adv. Pro., D.I. 841.

14.     The Complaint alleges that Yucaipa transferred approximately $379.7 million to the Defendants between October 2017 and May 2019 (the "Transfers") in an attempt to render itself judgment proof in the Yucaipa Adversary Proceedings.  Compl. ¶¶ 130–138.

15.     The Complaint contains three counts under Delaware state law, as follows:

Count I:     to avoid and recover the Transfers as actual fraudulent transfers pursuant to the Uniform Fraudulent Transfer Act (the "U.F.T.A."), 6 Del. C. § 1304(a)(1);

Count II:    to avoid and recover the Transfers as constructively fraudulent transfers pursuant to the U.F.T.A., 6 Del. C. §§ 1304(a)(2) and 1305(a); and

Count III:   a declaratory judgment that the General Partner is liable to for the debts of Yucaipa and requiring the General Partner to seek the return of the Transfers to satisfy any obligations that Yucaipa has, or may in the future incur, to the Litigation Trustee.

16.     The Litigation Trustee and certain of the Defendants, including the LP Defendants, have entered into several stipulations extending the deadline to respond to the Complaint.  The current date for such response is April 1, 2022.

## ARGUMENT

## I.     THE COURT SHOULD WITHDRAW THE REFERENCE OF THE ADVERSARY PROCEEDING.

17.     District courts "have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334.  By the Standing Order, the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 157(a), has referred cases and proceedings arising under the Bankruptcy Code to the Delaware Bankruptcy Court.  Notwithstanding the Standing Order, 28 U.S.C. § 157(d) provides that the District Court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown" and "shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organization or activities affecting interstate commerce".

18.     The first portion of § 157(d) provides for permissive withdrawal for cause, while the second portion provides for mandatory withdrawal when a court must consider federal laws other than the Bankruptcy Code.  *See In re Nortel Networks, Inc.*, 539 B.R. 704, 707 (D. Del. 2015) ("Section 157(d) provides for situations when a district court ***may*** withdraw the reference and when it ***must*** withdraw the reference . . . .").  Here, mandatory withdrawal is required and overwhelming cause also exists for permissive withdrawal.

### A.  Mandatory Withdrawal of the Reference is Required

19.     "In the District of Delaware, withdrawal is deemed mandatory when (1) consideration of law outside of Title 11 . . . is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material."  *In re Columbia Gas System, Inc.*, 134 B.R. 808, 110 (D. Del. 1991); *In re Continental Airlines*, 138 B.R. 442, 444–45 (D. Del. 1992); *Nortel*, 539 B.R. at 708.  "The party seeking withdrawal bears the burden of demonstrating that the action requires a substantial and material consideration of a federal statute outside the Bankruptcy Code."  *U.S. v. Delfasco, Inc.*, 409 B.R. 704, 707 (D. Del. 2009); *see also Continental*, 138 B.R. at 445.  Courts in this District have distinguished between "consideration" of a federal statute outside of the Bankruptcy Code, which triggers mandatory withdrawal, and "simple application" of non-Bankruptcy Code federal law, which does not require mandatory withdrawal.  *See Columbia Gas*, 134 B.R. at 811; *In re Homeland Stores, Inc.*, 204 B.R. 427, 431 (D. Del. 1997).  "Meaningful consideration of federal law . . . includes deciding an issue of first impression or analyzing the law beyond applying it to the facts of the case."  *Nortel*, 539 B.R. at 708.

20.     Here, the Litigation Trustee is pursuing, *inter alia*, state-law fraudulent transfer claims against the twenty-six LP Defendants (and others), seeking to recover up to approximately $379.7 million of Transfers allegedly made by Yucaipa.  Twelve of the twenty-six LP Defendants

are pension and other benefits plans (as indicated on Exhibit A, the "ERISA LP Defendants") that

are subject to, and enjoy the expansive protections of, the federal ERISA regulatory framework.

The ERISA LP Defendants represent an aggregate of approximately $119.6 million (over 30%) of

the nearly $380 million in total Transfers that the Litigation Trustee is seeking to recover through

the Complaint.  Accordingly, consideration of any ERISA-based defenses to the Complaint will

play a central role in resolving the Adversary Proceeding.[10]

21.    By the current agreement with the Litigation Trustee, the LP Defendants must

respond to the Complaint no later than April 1, 2022 (subject to further extensions by agreement

of the parties or court order).  The LP Defendants anticipate filing a motion to dismiss the

Complaint on various grounds.  Among other things, the ERISA LP Defendants will move to

dismiss the Complaint on the basis that the Litigation Trustee's claims against the ERISA LP

Defendants are barred by the anti-alienation provisions contained in the federal ERISA statute.

*See*, *e.g.*, 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under

the plan may not be assigned or alienated.").  The legislative history of the ERISA statute explains

that the anti-alienation provision's purpose is to protect pension benefits "against the claims of

general creditors," and to "further ensure that the employee's accrued benefits are actually

available for retirement purposes."  P.L.R. 9109051 (citing H.R. Rep. 1280, 93rd Cong., 2d Sess.

280 (1974); H.R. Rep. 807, 93rd Cong. 2d Sess. 68 (1974)).

22.    Accordingly, the LP Defendants satisfy the first prong of the test for mandatory

withdrawal of the reference under 28 U.S.C. § 157(d) because consideration of law outside of the

Bankruptcy Code is necessary for the resolution of the Adversary Proceeding.  *See Columbia Gas*,

---

[10] Multiple defenses will form the basis for the LP Defendants' forthcoming motion to dismiss, none of which relate
to any aspect of the Bankruptcy Code or the Delaware Chapter 11 Case.  The LP Defendants reserve all of their
rights in that regard.

134 B.R. at 810; *see also In re Kiefer*, 276 B.R. 196, 199 (E.D. Mich. 2002) (". . . ERISA is obviously a statute that affects interstate commerce").

23.     The LP Defendants also satisfy the second requirement for mandatory withdrawal of the reference because the court adjudicating the Adversary Proceeding will be required to engage in substantial and material "consideration"—as opposed to "mere application"—of ERISA.  In that regard, the circumstances of this Adversary Proceeding are directly analogous to this Court's ruling in *In re Homeland Stores, Inc.*, 204 B.R. 427, 432 (D. Del. 1997).

24.     The *Homeland* court held that withdrawal of the reference of an adversary proceeding was mandatory because the case involved the meaningful consideration of ERISA, rather the "simple application" of well-settled law.  Following plan confirmation, the debtors initiated an adversary proceeding against the trustees of an ERISA employee welfare benefit plan, alleging a count of federal common law right to restitution, a breach of contract claim, and seeking declaratory and injunctive relief.  *Id*. at 428–30.  The ERISA plan trustees filed counterclaims against the *Homeland* debtors, based upon the ERISA provision governing the award of unpaid contributions, and sought withdrawal of the reference from the bankruptcy court on both mandatory and permissive grounds.  *Id*. at 430.

25.     The district court found that adjudicating the adversary proceeding would include determining whether a restitution claim is "needed to fill in the interstices of the ERISA statute, and . . . concluding if an award is appropriate in light of possible harm to fund beneficiaries . . . ." *Id*. at 431.  Notably, the court recognized that such an analysis "could no doubt be competently undertaken by the Bankruptcy Court[,]" but the district court nonetheless found that "Congress intended the federal district courts to grapple with these issues . . . which implicate the ERISA statute and its jurisprudence."  *Id*. (citing, *Steiner Elec. Co. v. Central States, Southwest and*

*Southwest Area Pension Fund*, No. 95 C 687, 1995 WL 399517, at *6 (N.D. Ill. June 29, 1995) (finding that "Congress intended the federal courts to participate in the development of the ERISA statute")); *see also Delfasco*, 409 B.R. at 708 ("[I]n considering mandatory withdrawal, the issue for the Court is not whether the Bankruptcy Court *can* capably interpret environmental law, but rather whether the Bankruptcy Court will be *required* to interpret environmental law").

26.     Here, adjudication of the Adversary Proceeding will require consideration of whether ERISA's anti-alienation provision preempts the state-law claims asserted by the Litigation Trustee against the ERISA LP Defendants.  ERISA explicitly provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  For example, in *Boggs v. Boggs*, the U.S. Supreme Court held that ERISA's anti-alienation provision conflicts with, and thus preempts, state community property laws.  520 U.S. 833, 844 (1997).  In *Boggs*, the Supreme Court refused to expand the exceptions to ERISA's anti-alienation provisions beyond the exceptions contained within the statute itself in light of the importance of protecting both retirement benefits as well as the funds that are the source of those benefits.  *Id.* at 851–52.  Even where there is no direct conflict, courts have held that neutral state laws of general application, such as fraudulent transfer laws, are still preempted in situations where the state laws significantly affect plan operation and administration.  *See N.Y. State Conference of Blue Cross & Blue Shield Tribune Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995) (acknowledging that "a state law [producing] acute, albeit indirect, economic effects, by intent or otherwise," on ERISA-qualified plan administration is preempted).

27.     Of course, this Court does not need to resolve such complex interactions between Delaware fraudulent transfer law and ERISA anti-alienation provisions to find that mandatory withdrawal of the reference is appropriate.  Indeed, it is instructive that the *Homeland* court, after

identifying several of the ERISA-based issues that would likely guide resolution of that case, noted that it "need not wade through" the issues, but was "merely pinpointing potential ERISA issues, not addressing or deciding them in any meaningful fashion" to conclude that the adversary proceeding involved "meaningful consideration of federal law outside the Bankruptcy Code and more than the 'simple application' of well-settled law." *See Homeland*, 204 B.R. at 432.

28.    Similarly, this Court need not "wade through" or resolve the various aspects of arguments that the ERISA LP Defendants will make to conclude that resolution of the Adversary Proceeding will involve substantial consideration of ERISA law and determine that mandatory withdrawal is required. While the ERISA LP Defendants believe they have very strong arguments to dismiss the Complaint based upon ERISA's anti-alienation provisions, it appears that there is no binding Third Circuit precedent directly on point and thus the Bankruptcy Court cannot simply apply settled federal law to the facts of this case. *Cf. Nortel*, 539 B.R. at 708–09 (bankruptcy court would only have to decide how federal copyright law applied "to the facts of the case, rather than deciphering or interpreting the law"); *In re Holman*, 325 B.R. 569, 574–75 (E.D. Ky. 2005) ("[E]xisting Sixth Circuit precedent discussing the definition of fiduciaries and fiduciary breaches under ERISA provides adequate guidance for the Bankruptcy Court to be able to apply to the facts of this case."). Accordingly, 28 U.S.C. § 157(d) mandates withdrawal of the reference.

### B.  Cause Exists for the Permissive Withdrawal of the Adversary Proceeding

29.    Substantial cause also exists for permissive withdrawal of the reference. A district court may withdraw a proceeding from the bankruptcy court for "cause shown". 28 U.S.C. § 157(d); *In re Visteon Corp*, No. 09-11786 (CSS), 2011 WL 1791302, at *3 (D. Del. May 9, 2011) ("Withdrawal is discretionary if a moving party can show cause"). The Third Circuit "has set forth five factors that a district court should consider in determining whether 'cause' exists for discretionary withdrawal. These factors include:

(1)    promoting uniformity of bankruptcy administration;

(2)    reducing forum shopping and confusion;

(3)    fostering economical use of debtor/creditor resources;

(4)    expediting the bankruptcy process; and

(5)    timing of the request for withdrawal."

*In re Winstar Commc'ns, Inc.*, 321 B.R. 761, 763–64 (D. Del. 2005) (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990)).  Another factor courts have considered in deciding whether permissive withdrawal is appropriate is whether the parties have requested a jury trial.  *See Winstar*, 321 B.R. at 764; *see also In re NDEP Corp.*, 203 B.R. 905, 908 (D. Del. 1996).

30.    "A threshold determination is whether the matter to be withdrawn is a core or non-core proceeding in bankruptcy court.  The distinction is significant because a Bankruptcy Court cannot conduct a jury trial in a non-core proceeding, whereas it may conduct a jury trial in a core proceeding in some instances."  Visteon, 2011 WL 1791302, at *3 (internal citations omitted); In re Appleseed's Intermediate Holdings, LLC, No. 11-807(JEI/KM), 2011 WL 6293251, at *2 (D. Del. Dec. 15, 2011) ("[T]he determination of whether the claims are core or non-core guides a cause analysis and, therefore, must be considered preliminary").

### 1.    *The Adversary Proceeding Involves Only Non-Core Claims*

31.    Bankruptcy courts have limited subject matter jurisdiction, as provided by 28 U.S.C. §§ 1334 and 157.  *See In re SemCrude L.P.*, No. 11-1174-SLR, 2012 WL 5554819, at *3 (D. Del. Nov. 15, 2012).  The bankruptcy court's jurisdiction extends to four types of matters: (i) cases under title 11; (ii) proceedings arising under title 11; (iii) proceedings arising in a case under title 11; and (iv) proceedings related to a case under title 11.  Only the first three categories of cases are "core proceedings"; "related-to" are "non-core" proceedings.  *See id.*; *see also Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004).

32.    "In non-core proceedings that are otherwise related to a case under title 11, bankruptcy courts shall submit proposed findings of fact and conclusions of law to the district court.  Bankruptcy courts do not have the authority to enter final orders or judgments in non-core proceedings unless all the parties consent and the district court so refers the case."  *Appleseed's*, 2011 WL 6293251, at *2 (internal citations and quotations omitted).  This Adversary Proceeding—comprised entirely of state-law claims—is fundamentally a non-core proceeding commenced years after the Plan was confirmed and went effective.  The LP Defendants do not consent to the Delaware Bankruptcy Court entering any final order or judgment in the Adversary Proceeding.

33.    The Litigation Trustee avers that the Adversary Proceeding "relates to, and arises in the Bankruptcy Case."  Compl. ¶ 11.  However, even a cursory review of the Complaint belies the assertion of "arising in" jurisdiction.  The Transfers that form the basis for the Complaint all occurred between two and four years *after* the Delaware Bankruptcy Court confirmed the Plan.  The Litigation Trustee seeks to recover alleged fraudulent transfers that a non-debtor, Yucaipa, allegedly made to the non-debtor LP Defendants, all but one of which did not even file proofs of claim in the Delaware Chapter 11 Case.  Nor does the Litigation Trustee assert any claims whatsoever under the Bankruptcy Code or bankruptcy law.  Rather, the Complaint only asserts two state law fraudulent transfer claims and a count for declaratory relief in connection with the LPAs, governed by Delaware law.  LPAs, Art. 16.7.

34.    This Court should reject the Litigation Trustee's blatant attempt to disguise plain vanilla state law claims, premised on facts that occurred years after confirmation and involving only non-debtor parties, as arising in the Delaware Chapter 11 Case, in an effort to cloak the Adversary Proceeding as core.  The Third Circuit has held that a "proceeding is core . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could

-13-

arise only in the context of a bankruptcy case." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 196 (3d Cir. 1999).

35.    By contrast, the Litigation Trustee's claims can be, and have been,[11] asserted against the LP Defendants outside the Delaware Bankruptcy Court and are completely independent of the Bankruptcy Code and bankruptcy law. *See In re 5171 Campbells Land Co.*, No. 1:21-cv-216, 2022 WL 267357, at *2 (W.D. Pa. Jan. 28, 2022) (plaintiff trustee's claims of professional negligence and legal malpractice invoke "only state law causes of action that could plainly arise outside the context of a bankruptcy case"); *In re AgFeed USA, LLC*, 565 B.R. 556, 563 (D. Del. 2016) (plaintiff trustee's state common law claims for professional negligence, malpractice, and breach of contract are "non-core and, absent consent of the parties, the Bankruptcy Court is without authority to enter a final judgment or order with respect to those claims").

36.    The Litigation Trustee fares no better in attempting to characterize the state law fraudulent transfer claims as "core" by reliance on 28 U.S.C. § 157(b)(2)(H). *See* Compl. ¶ 15. Section 157(b)(2)(H) provides core proceedings include, among others, "proceedings to determine, avoid, or recover fraudulent conveyances[.]" The Complaint does not, and cannot, rely upon Bankruptcy Code § 544(b)(1) to incorporate state fraudulent transfer law as a basis to avoid and recover the Transfers from the LP Defendants.[12] This is because the Litigation Trustee is not attempting to avoid a transfer of property of Allied or an obligation incurred by Allied. Rather, the Complaint *only* seeks to recover transfers made by non-debtor Yucaipa to the non-debtor LP Defendants. Thus, § 544(b)(1) is inapplicable on its face. The Litigation Trustee cannot use 28

---

[11]    *See, e.g.*, *Youngman v. Yucaipa American Alliance Fund I, LLC, et al.*, Case No. 21STCV37137 (Cal. Super Ct.), in which the Litigation Trustee has asserted substantially similar fraudulent transfer claims against a subset of the LP Defendants (among others) in the Los Angeles County Superior Court.

[12] Bankruptcy Code § 544(b)(1) permits a chapter 11 debtor to step into the shoes of a holders of allowed unsecured claims and assert state law fraudulent conveyance claims that ordinarily belong to such creditors outside of bankruptcy. The Litigation Trustee here is suing directly in her capacity as a judgment creditor, not under § 544.

U.S.C. § 157(b)(2)(H) as a means to convert state-law fraudulent transfer claims asserted in her capacity as a judgment creditor, and not under § 544(b) or any other provision of the Bankruptcy Code, into a core proceeding.  Such a position is without logic or legal support.

37.      Even if § 544(b) were somehow applicable, the Litigation Trustee could not establish that the fraudulent transfer claims asserted in the Complaint are core.  The Delaware Bankruptcy Court, in *Chorches for the Estate of Scott Cable Communications, Inc. v. U.S. Bank Nat'l Assoc.*, No. 11-00105 (KJC), 2014 WL 5280002, at *4 (Bankr. D. Del. Oct. 15, 2014), addressed the issue of whether a bankruptcy court could enter final judgments and orders arising from a state law fraudulent transfer claim *brought pursuant to Bankruptcy Code § 544(b)*.  The Delaware Bankruptcy Court first recognized that "[s]tatutorily, the claims asserted . . . are core pursuant to 28 U.S.C. § 157(b)(1) and 2(B) and (H)."  But, the court made clear that reference to § 157 is not the end of the analysis:  "However, recent decisions by the United States Supreme Court determined that Article III of the Constitution does not permit a bankruptcy court to enter a final judgment on certain claims, despite Congress's designation of such claims as "core" in the Bankruptcy Code."  *Id.* (citing *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014), *Stern v. Marshall*, 131 S.Ct. 2594 (2011)).

38.      The *Chorches* court held that it did have authority to enter a final judgment and order because (a) the state law fraudulent claim brought under § 544(b) was against a creditor that had filed a proof of claim in the debtor's bankruptcy case and (b) "consideration of the fraudulent conveyance issue is necessary to" resolve the creditor's proof of claim.  *Chorches*, 2014 WL 528002, at *4.  By contrast, the Adversary Proceeding here does not implicate § 544(b).  None of the LP Defendants, except for one,[13] filed a proof of claim in the Delaware Chapter 11 Case.

---

[13] Because the allegations forming the basis of the Complaint are alleged to have occurred years after Plan confirmation, the basis for the proof of claim is entirely unrelated to the fraudulent transfer claims in the Complaint.

Accordingly, the Litigation Trustee is unable to demonstrate the fraudulent transfer claims are core claims and/or that that the Delaware Bankruptcy Court has the Constitutional authority to enter final orders and judgments in the Adversary Proceeding.

> **2.**      *Withdrawing the Reference Will Ensure Uniform Bankruptcy Administration*

39.     Resolution of the Adversary Proceeding will require no analysis of substantive or procedural bankruptcy law and is unrelated to any issue of uniform bankruptcy administration. Rather, the Litigation Trustee's fraudulent transfer claims are premised upon Delaware's version of the U.F.T.A. (Compl. ¶¶ 141, 145) and the request for declaratory relief relates to the LPAs, which are governed by Delaware law (Compl. ¶ 150). *Cf. Visteon*, 2011 WL 1791302, at *4 ("[T]he Bankruptcy Court's retention of this claim would not promote uniformity of bankruptcy administration, because the claim will require resolution of issues of Missouri tort law"). Thus, this factor weighs in favor of withdrawing the reference.

> **3.**      *Withdrawing the Reference is Not an Attempt at Forum Shopping*

40.     This Motion is not an attempt to engage in forum shopping. It is an effort to *avoid* forum shopping and have the Adversary Proceeding resolved before a court that is empowered to enter final orders and judgments in the first instance—a power that the Delaware Bankruptcy Court lacks. Moreover, as explained above, the ERISA LP Defendants intend to raise arguments in the motion to dismiss that will require substantial consideration and interpretation of the anti-alienation provisions of ERISA. The interpretation of non-bankruptcy federal law is the province of the federal district courts. *See Steiner Elec. Co.,* 1995 WL 399517, at *6 ("Congress intended the federal courts to participate in the development of the ERISA statute. . .").

41.     The Adversary Proceeding solely involves non-bankruptcy, state-law claims asserted against non-debtor parties. Resolution of such matters should be resolved in the forum most appropriate to consider them. *See In re Petition of McMahon*, 222 B.R. 205, 208 (S.D.N.Y

1998) ("Forum shopping would not be encouraged by granting the Defendant's motion as this case involves a non-core proceeding that could have and probably should have been brought in the district court originally"); *see also Homeland*, 204 B.R. at 434 (finding that the withdrawn adversary proceeding was "litigation that although brought by a party in bankruptcy proceedings, could just as well have been initiated in the district court"). This factor also weighs in favor of withdrawing the reference.

### 4.    *Withdrawal Will Promote Economical Use of Bankruptcy Court Resources*

42.    While the Delaware Bankruptcy Court has experience and expertise in overseeing and resolving complex corporate restructurings, none of those specialized skills are relevant to the Adversary Proceeding. The Plan (which relates to the Adversary Proceeding only insofar as it created the trust that the Litigation Trustee oversees) was confirmed over six years ago. All of the actions that form the basis of the Complaint are alleged to have occurred years after confirmation. "[F]ollowing confirmation and effectiveness of the Plan, it is more economical for the Bankruptcy Court to spend its resources on administration of the bankruptcy estate." *Visteon*, 2011 WL 1791302, at *4; *see also Homeland*, 204 B.R. at 434 ("Congress did not intend the Bankruptcy Courts, which have sharpened their expertise in a specialized body of law, to be flooded with non-chapter 11 disputes that have such a tenuous relationship to a bankruptcy proceeding"). The Adversary Proceeding is precisely the type of post-confirmation litigation—asserting only non-core claims under state law arising after confirmation—suited to permissive withdrawal.

43.    Moreover, although not alone a determinative factor, courts in this District have considered, as part of the judicial economy analysis, whether a defendant has demanded a jury trial. *In re U.S.A. Floral Prods., Inc.*, No. 01-1230 (MFW), 2005 WL 3657096, at *2 (D. Del. July 1, 2005) ("[I]t appears that consideration of judicial economy favor withdrawal. Because it is essentially conceded that Defendants are entitled to a jury trial, it will likely be more efficient

for this court to manage the case through the pretrial process."); *In re Gruppo Antico, Inc.*, No. 02-13283 (PJW), 2005 WL 3654215, at *1 (D. Del. July 1, 2005); *NDEP Corp.*, 203 B.R. at 913 (quoting *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990) ("Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation.")).

44.    As noted above, the LP Defendants will demand their Seventh Amendment right to a jury trial on all claims asserted in the Complaint. *Accord In re Uni Marts, LLC*, No. 09-164-JJF, 2009 WL 1631821, at *2 (D. Del. June 11, 2009) ("[A]lthough Defendant has yet to answer the Complaint, it has expressed its intention to seek a jury trial on the legal claims at issue"). Moreover, the LP Defendants do not consent to the Delaware Bankruptcy Court entering final orders or judgments in the Adversary Proceeding. Thus, this issue strongly favors withdrawal.

45.    Finally, when considering judicial efficiency, courts in this District have at times found that the bankruptcy court's familiarity with the parties or issues related to the subject proceeding favor denial of a motion for permissive withdrawal of the reference. *See, e.g.*, *In re Big V. Holding Corp.*, No. 00-04372 (RTL), 2002 WL 1482392, at *4 (D. Del. July 11, 2002) ("[T]he Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the [adversary proceeding]. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court"). The Litigation Trustee will likely point to the years of litigation in the Yucaipa Adversary Proceedings and argue that such experience warrants denial of the Motion. That argument fails for two primary reasons:

46.    <u>First</u>, the Yucaipa Adversary Proceedings relate exclusively to prepetition conduct. The events and circumstances that form the basis of such litigation are completely independent

from the facts and legal theories advanced by the Litigation Trustee in the Adversary Proceeding. Accordingly, the current bankruptcy judge's familiarity with the Yucaipa Adversary Proceedings is wholly irrelevant to *this* Adversary Proceeding.  <u>Second</u>, Bankruptcy Judge Sontchi is retiring effective June 30, 2022.[14]  Even if his prior experience with the Yucaipa Adversary Proceedings somehow could aid in the adjudication of this Adversary Proceeding, it is unlikely that Judge Sontchi will hear and decide even the LP Defendants' forthcoming motion to dismiss before his impending retirement.  Thus, the Judge Sontchi's familiarity with the Yucaipa Adversary Proceedings does not promote judicial economy in this Adversary Proceeding.  For all of the forgoing reasons, judicial economy considerations heavily favor withdrawal of the reference.

**5.    *Withdrawal Will Expedite the Bankruptcy Process***

47.    For many of the same reasons discussed above, withdrawal will also expedite a final determination of the parties' respective rights in the Adversary Proceeding.  As the *Appleseed's* court observed, "withdrawing the reference now will expedite the bankruptcy process. The parties can skip the Bankruptcy Court and proceed directly in this Court, which will eliminate a round of appeals.  Furthermore, the reorganization process has already been completed, which only leaves litigation over state law claims.  The District Court, perhaps even more so than the Bankruptcy Court, has the expertise to efficiently dispose of adversarial litigation." *Appleseed's*, 2011 WL 6293251, at *3.  The legal reasoning and practical logic articulated in the *Appleseed's* decision is fully applicable to the circumstances of the Adversary Proceeding.  Accordingly, this factor weighs strongly in favor of withdrawing the reference.

---

[14] *Announcement of Retirement of Judge Christopher Sontchi*, (Nov. 15, 2021), *available at* https://www.deb.uscourts.gov/news/announcement-retirement-judge-christopher-sontchi.

6.      *The Request to Withdraw is Timely*

48.     "A §157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995).  Timeliness is "measured by the stage of the proceedings in the Bankruptcy Court".  *U.S.A. Floral Prods.*, 2005 WL 3657096, at *1.  "A court is more likely to find the motion untimely as the proceeding becomes more developed, complicated and involved[.]"  *Id.* (internal quotations omitted).

49.     Here, the Complaint is the original complaint in the Adversary Proceeding and the LP Defendants' time to respond to it has not yet elapsed.  Thus, the Motion is timely because it is being made at the first reasonable opportunity that the LP Defendants had notice of both mandatory and permissive grounds for withdrawal of the reference.  *See AgFeed*, 565 B.R. at 566 ("This case is in its infancy. . . . Thus, the Court finds that Defendants['] Motions to Withdraw, filed at the very outset of this litigation, were timely made, and this factor does not weigh against permissive withdrawal").  Because this Motion is filed at the very outset of the Adversary Proceeding, and prior to the filing of any responsive pleadings by the LP Defendants, this factor weighs in favor of permissive withdrawal.

In sum, all of the applicable factors strongly favor permissive withdrawal, and thus, the LP Defendants have established cause for permissive withdrawal of the reference.

## **CONCLUSION**

For the foregoing reasons, this Court should withdraw the reference of the Adversary Proceeding.

Dated: March 4, 2022                    Respectfully submitted,
      Wilmington, Delaware

By: */s/ L. Katherine Good*
    Christopher M. Samis (No. 4909)
    L. Katherine Good (No. 5101)
    **POTTER ANDERSON & CORROON LLP**
    1313 North Market Street, 6th Floor
    Wilmington, Delaware 19801
    Telephone:  (302) 984-6000
    Facsimile:  (302) 658-1192
    Email:    csamis@potteranderson.com
              kgood@potteranderson.com

    -and-

    Michael Etkin, Esq. (*pro hac vice*)
    Andrew Behlmann, Esq. (*pro hac vice*)
    Nicole Fulfree, Esq. (*pro hac vice*)
    Colleen Maker, Esq. (*pro hac vice*)
    **LOWENSTEIN SANDLER LLP**
    One Lowenstein Drive
    Roseland, NJ  07068
    Telephone:  (973) 597-2500
    Email:    metkin@lowenstein.com
              abehlmann@lowenstein.com
              nfulfree@lowenstein.com
              cmaker@lowenstein.com

    *Counsel to the LP Defendants*