**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ASHINC Corporation, et al., | Case No. 12-11564 (CSS) |
| Debtors. | Jointly Administered |

| | |
|---|---|
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS, | Adversary Proceeding No. 21-51179 (CSS) |
| Plaintiff, | |
| vs. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, LLC, YUCAIPA AMERICAN MANAGEMENT, LLC, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY THE BOARD OF FIRE AND POLICE PENSION COMMISSIONERS
AND THE BOARD OF ADMINISTRATION OF THE LOS ANGELES
CITY EMPLOYEES' RETIREMENT SYSTEM**

Dated: May 31, 2022

**DANNING, GILL, ISRAEL & KRASNOFF, LLP**
Uzzi O. Raanan, Esq.
Zev Shechtman, Esq.
Alphamorlai L. Kebeh, Esq.
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone:     (310) 277-0077
Email: uraanan@DanningGill.com
        zs@DanningGill.com
        akebeh@DanningGill.com

**CROSS & SIMON, LLC**
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Email: csimon@crosslaw.com
        kmann@crosslaw.com

*Counsel for Defendants Board of Fire and Police Pension
Commissioners and Board of Administration of the
Los Angeles City Employees' Retirement System*

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF NATURE AND STAGE OF THE PROCEEDING..............................2

II.    SUMMARY OF ARGUMENT ....................................................................................2

III.    STATEMENT PURSUANT TO FED. R. BANKR. P. 7012 AND LOCAL RULE
7012-1 .........................................................................................................................3

IV.    STATEMENT OF FACTS ..........................................................................................4

    A.    The City Pension Defendants....................................................................4

    B.    Allied's Chapter 11 Cases.........................................................................5

    C.    The Yucaipa Litigation ..............................................................................8

    D.    Plaintiff Sues the City Pension Defendants Under Delaware Law.........8

    E.    Plaintiff Sues the City Pension Defendants Under California Law.........8

V.    ARGUMENT ................................................................................................................9

    A.    The Court Lacks Subject Matter Jurisdiction ..........................................9

        1.    The Yucaipa Action is not a Core Proceeding...........................10

        2.    The Court Does Not Have "Related To" Jurisdiction Over the
Claims .........................................................................................10

    B.    In the Alternative, the Court Should Abstain Under 28 U.S.C. § 1334.................16

        1.    Mandatory Abstention ................................................................16

        2.    Permissive Abstention ................................................................17

    C.    Counts One and Two of the Complaint Must Be Dismissed as to the
Avoidance of Transfers Made More Than Three Years Ago. ..............21

VI.    JUDICIAL NOTICE.................................................................................................22

VII.    CONCLUSION..........................................................................................................24

i

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>CASES</u>

Broadhollow Funding, LLC v. Bank of Am., N.A. (In re Am. Home Mortg.),
    390 B.R. 120 (Bankr. D. Del. 2008) ................................................................ 19

Diamond v. Friedman (In re Century City Doctors Hospital, LLC),
    466 B.R. 1 (Bankr. C.D. Cal. 2012) ................................................................ 21

Donaldson v. Bernstein,
    104 F.3d 547 (3d Cir. 1997) ............................................................................ 13

Fairchild Liquidating Trust v. New York (In re Fairchild Corp.),
    452 B.R. 525 (Bankr. D. Del. 2011) ...................................................... 9, 11, 12

Falise v. American Tobacco Co.,
    241 B.R. 48 (E.D.N.Y. 1999) .......................................................................... 12

Faulkner v. Eagle View Capital Mgmt. (In re Heritage Org., L.L.C.),
    454 B.R. 353 (Bankr. N.D. Tex. 2011) ...................................................... 14, 15

Grimes v. Graue (In re Haws),
    158 B.R. 965 (Bankr. S.D. Tex. 1993) ............................................................ 12

In re DHP Holdings II Corp.,
    435 B.R. 220 (Bankr. D. Del. 2010) .......................................................... 18, 19

In re Exide Techs.,
    544 F.3d 196 (3d Cir. 2008) ............................................................................ 10

In re H & L Developers, Inc.,
    178 B.R. 71 (Bankr. E.D. Pa. 1994) ............................................................... 12

In re Integrated Health Servs., Inc.,
    291 B.R. 615 (Bankr. D. Del. 2003) ................................................................ 19

In re Marcus Hook,
    943 F.2d 261 (3d Cir. 1991) ............................................................................ 11

In re PennySaver USA Publ'g, LLC,
    587 B.R. 43 (Bankr. D. Del. 2018) .................................................................. 11

In re Resorts International, Inc.,
    372 F.3d 154 (3d Cir. 2004) ...................................................................... passim

# TABLE OF AUTHORITIES
## (Continued)

Page

In re Sportsman's Warehouse, Inc.,
    457 B.R. 372 (Bankr. D. Del. 2021) ............................................................................ 9, 16

In re Trans American Natural Gas Corp.,
    127 B.R. 800 (S.D. Tex. 1991) ..................................................................................... 12

Kehr Packages, Inc. v. Fidelcor, Inc.,
    926 F.2d 1406 (3d Cir. 1991)........................................................................................ 9

Pacor, Inc. v. Higgins (In re Pacor),
    743 F.2d 984 (3d Cir. 1984).......................................................................................... 11

Reclaimant Corp. v. Deutsch,
    211 A.3d 976 (Conn. 2019) .......................................................................................... 21

Things Remembered, Inc. v. Petrarca,
    516 U.S. 124 (1995)..................................................................................................... 11

Torkelsen v. Maggio (In re Guild & Gallery Plus),
    72 F.3d 1171 (3d Cir. 1996).......................................................................................... 10

Triad Guar. Ins. v. Am. Home Mortg. Inv. Corp. (In re Am. Home Mortg. Holding),
    477 B.R. 517 (Bankr. D. De. 2012) ............................................................................. 11

Warren v. Calania Corp.,
    178 B.R. 279 (M.D. Fla. 1995)..................................................................................... 12

## STATUTES

28 U.S.C. § 1334............................................................................................... 9, 10, 13

28 U.S.C. § 1334(c)(1)............................................................................................ 16, 17

28 U.S.C. § 1334(c)(2)................................................................................................. 16

28 U.S.C. § 157................................................................................................. 9, 10, 13

6 Del. C. § 1304(a)(1) .................................................................................................. 8

6 Del. C. § 1304(a)(2) .................................................................................................. 8

6 Del. C. § 1305(a)....................................................................................................... 8

6 Del. C. § 17-607(c) ................................................................................................... 21

# TABLE OF AUTHORITIES
### (Continued)

**Page**

## OTHER AUTHORITIES

Section 17-607(c) of the Delaware Revised Uniform Limited Partnership Act ............................ 3

## RULES

Fed. R. Bankr. P. 7012 ........................................................................................................... 3

Federal Rule of Civil Procedure 12(b)(1) .............................................................................. 9

Federal Rule of Civil Procedure 5011 ................................................................................... 16

Local Bankruptcy Rule 7012-1 .............................................................................................. 3

The Board of Fire and Police Pension Commissioners ("LAFPP") and the Board of Administration of the Los Angeles City Employees' Retirement System ("LACERS") (together, the "City Pension Defendants"), by and through their undersigned attorneys, respectfully submit this *Memorandum of Law in Support of Motion to Dismiss* (the "Memorandum") the Litigation Trustee's Complaint to (I) Avoid and Recover Avoidable Transfers, and (II) for a Declaration of Liability Against Yucaipa American Alliance Fund I, LLC [Adv. Pro. No. 21-51179 (CSS)] (the "Complaint"), filed by Catherine E. Youngman, as the Litigation Trustee and Plan Administrator (the "Trustee" or "Plaintiff") for ASHINC Corp. (formerly known as Allied Systems Holdings, Inc.) and related debtors ("Allied" or the "Company").

# I.

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

1.      On May 17, 2012 (the "Petition Date"), involuntary chapter 11 cases were commenced against Allied Systems Holdings, Inc. ("Allied Holdings") and Allied Systems, Ltd. (L.P.) ("Allied Systems").  See Bankruptcy Case No. 12-11564 (CSS) ("Main Case"), Docket Index ("D.I.") 1.  On June 10, 2012, Allied Holdings and Allied Systems consented to entry of orders for relief and caused seventeen direct and indirect subsidiaries of Allied Holdings to file voluntary petitions (collectively the "Debtors").  See Main Case, D.I. 68, 88.

2.      On October 6, 2021, the Plaintiff filed the Complaint in the present action in her capacity as "a judgment creditor against Yucaipa", alleging that the City Pension Defendants were recipients of both "actual" and "constructive" fraudulent transfers under Delaware Law. See Complaint at ¶ 1, 32-33.

# II.

## SUMMARY OF ARGUMENT

3.      The Court lacks subject matter jurisdiction over this proceeding, as it is not a core proceeding.  As indicated by the facts alleged in Plaintiff's Complaint, neither of the City

Pension Defendants were involved in the Allied bankruptcy case, and the claims for relief alleged by Plaintiff involve strictly state law. The alleged claims for relief do not require interpretation of Debtors' Plan of Reorganization, which was confirmed over six years ago, and none of the claims alleged herein arose prepetition or even pre-Plan confirmation. Thus, this action is not a core proceeding and the Court should dismiss this action.

4.      This Court also lacks "related to" jurisdiction over Plaintiff's claims. Plaintiff's alleged claims represent a collection action by a post-confirmation litigation trust which will have no impact on creditors of this bankruptcy case or on the implementation of Debtors' Plan. As Plaintiff cannot establish a close nexus between this action and Debtors' confirmed Plan, the Court should dismiss this action on subject matter jurisdiction grounds.

5.      Alternatively, even if the Court were to find that it has subject matter jurisdiction, it should still abstain from hearing Plaintiff's Claims. City Pension Defendants, as well as Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively "Yucaipa"), are located in California, where any alleged transfers would have occurred and where, tellingly, Plaintiff has already filed an identical action seeking to set aside the distributions in question here. All the factors considered in an abstention analysis strongly weigh in favor of both mandatory and permissive abstention.

6.      If the Court were to decline to dismiss this action, it should dismiss Counts One and Two against City Pension Defendants to the extent Plaintiff seeks to avoid transfers alleged to have occurred more than three years prior to the filing of the Complaint. In this respect, the Complaint runs afoul of Section 17-607(c) of the Delaware Revised Uniform Limited Partnership Act ("RULPA"), which limits the reach back period for fraudulent transfer actions to three years.

## III.

## STATEMENT PURSUANT TO FED. R. BANKR. P. 7012 AND LOCAL RULE 7012-1

7.      Pursuant to Bankruptcy Rule 7012 and Local Rule 7012-1, City Pension Defendants do not consent to the entry of final orders or judgments by the Bankruptcy Court.

3

## IV.

## STATEMENT OF FACTS

**A.      The City Pension Defendants**

8.      Established in 1899, LAFPP is dedicated to administering the Los Angeles Fire and Police Pensions plan on behalf of over 26,000 active and retired firefighters and police officers.  LAFPP serves the men and women who dedicate their careers and risk their lives to protect the people of Los Angeles by safeguarding these public servants after they retire from service.  LAFPP provides a defined benefit pension plan, medical and dental plan administration assistance, and pre- and post-retirement counseling for its civil servant members and their families.  Those benefits are funded by employee and employer contributions, and by returns on pension fund investments in a diversified portfolio, including limited partnership investments in the private equity asset class.

9.      Established in 1937, LACERS administers retirement benefits for approximately 25,200 active employees and another 22,000 retired members and beneficiaries.  LACERS' mission is to protect and grow its trust fund and to ensure the sustainable delivery of ethical, reliable, and efficient retirement services to its public servant members and their families. LACERS also provides a defined benefit pension plan, medical and dental plans, and pre- and post-retirement counseling.  Like LAFPP's board, LACERS' board has a fiduciary responsibility to ensure that the retirement benefits that have been promised to its members and their beneficiaries are funded over the long term, through collecting employee and employer contributions, and by investing prudently in a diversified portfolio, including investing as a limited partner in private equity funds.

10.      LACERS and LAFPP invested pension funds with Yucaipa as limited partners. Defendant Yucaipa American Alliance Fund I, LLC (the "General Partner") managed the funds and delivered cash distributions to the participating limited partners.  The distributions received by the City Pension Defendants were utilized for the exclusive benefit of delivering Los Angeles

4

city employee pensions and health care services and defraying the reasonable cost of administering those retirement benefits.

11.    Years after City Pension Defendants received distributions on account of their limited partnership interests, Plaintiff seeks to avoid the distributions under the Delaware Uniform Fraudulent Transfer Act ("Delaware UFTA").  However, recognizing that this Court may not have subject matter jurisdiction, Plaintiff hedged her bets by also filing an action in a California superior court seeking to set aside the same distributions she seeks to avoid in the present action.[1]  For unclear reasons, Plaintiff's California action relies on the California Uniform Voidable Transactions Act ("California UVTA"), rather than the Delaware UFTA. Other than to haul the City Pension Defendants across the country to litigate in a venue she perceives as friendly, it is unclear why Plaintiff filed her fraudulent transfer claims against LAFPP and LACERS in this Court.

## B.    Allied's Chapter 11 Cases.

12.    On May 17, 2012, involuntary chapter 11 cases were commenced against Allied Systems Holdings, Inc. and Allied Systems, Ltd. (L.P.).  See Bankruptcy Case No. 12-11564 (CSS) ("Main Case"), Docket Index ("D.I.") 1.  On June 10, 2012, Allied Holdings and Allied Systems consented to entry of orders for relief and caused seventeen direct and indirect subsidiaries of Allied Holdings to file voluntary petitions.  See Main Case, D.I. 68, 88.

13.    In 2012 and 2013, the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases and certain other individual creditors commenced adversary

---

[1] According to the LP Defendants' Opening Brief in Support of Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011, the Plaintiff also filed an additional eight actions against certain of the Defendants based on similar allegations and theories in the U.S. District Court for the District of Columbia, as well as in the California, Maryland, Massachusetts, New Jersey, New Mexico, New York, and Washington state courts.  See Adversary Proceeding No. 21-51179, D.I. 47.

proceedings (collectively the "Adversary Proceedings") against Yucaipa alleging, among other things, that Yucaipa was liable for breach of contract and breach of fiduciary duty.[2]

14.    On December 9, 2015, this Court entered an order (the "Confirmation Order") confirming the Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization Proposed by the Debtors, the Committee and the First Lien Agents (the "Plan").  See Main Case, D.I. 3383.  Under the Confirmation Order, the "Litigation Claims" were vested in the ASHINC Litigation Trust (the "Trust"), and Catherine E. Youngman was appointed the "Litigation Trustee" of the Trust.  See Confirmation Order, ¶ 21.  The Plan defined the "Litigation Claims" to include the "Estate Claims," which term was defined to mean:

> all claims of the Debtors' Estates asserted in the Amended Complaint
> and any additional claims of the Debtors' Estates arising out of, or
> related to, the facts and circumstances described in the Amended
> Complaint, including defendants not named in the Amended Complaint.[3]

Plan, at §§ 1.2(102) and 1.2(71).

15.    Section 9.1(e) of the Plan purported to reserve jurisdiction in the Court over certain proceedings, including the Litigation Claims, except as otherwise ordered by the Court. However, in Paragraph 54 of the Confirmation Order, the Court expressly overrode Section 9.1(e) of the Plan with respect to the Court's jurisdiction over the Litigation Claims:

---

[2] Adversary Proceeding No. 13-50530 (the "Estate Action") was commenced against Yucaipa on February 1, 2013.  Adversary Proceeding No. 14-50971 (the "Lender Action") was commenced against Yucaipa on November 19, 2014.

[3] The "Amended Complaint" is defined to mean:

the Official Committee of Unsecured Creditors' Amended Complaint for (I) Equitable Subordination, (II) Recharacterization, (III) Breach of Contract, (IV) Specific Performance, (V) Breaches of Fiduciary Duties, (VI) Aiding and Abetting Breaches of Fiduciary Duties, (VII) Avoidance and Recovery of Avoidable Transfers, and (VIII) Disallowance of Certain Claims [Adv. Pro. Docket No. 76], filed on March 14, 2013 in the adversary proceeding captioned The Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. v. Yucaipa American Alliance Fund I, L.P., et al., Adv. Pro. No. 13-50530 (CSS).

Plan, at § 1.2(21).

Notwithstanding anything in the Plan, the Plan Supplement, or this Confirmation Order to the contrary, nothing in the Plan, Plan Supplement, or this Confirmation Order shall be deemed to (i) provide the Bankruptcy Court with jurisdiction over any Litigation Claims and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan, (ii) limit or impair any named or unnamed defendant's right to contest the Bankruptcy Court's jurisdiction over any Litigation Claim and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan that may be asserted against them, or (iii) modify the rights of any person or entity as described in Section 3.7(e) of the Plan.

Confirmation Order, at ¶ 54.

Section 3.7(e) of the Plan, which is referenced above, further provides:

The Plan and Confirmation Order shall have no effect on or prejudice in any way Yucaipa or the Plan Proponents', Mark Gendregske's, or Brian Cullen's (or their successors or assigns) respective rights, claims or defenses or be used in any way in any litigation, contested matter, adversary proceeding (or any appeal from any order entered in any of the foregoing) involving (i) Yucaipa, (ii) the Plan Proponents (or with respect to the entities identified in clauses (i) and (ii) their respective affiliates (including BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P.) or officers or directors, or any of their respective successors or assigns), or (iii) any of the Debtors' current or former officers or directors, provided however, that the Plan and Confirmation Order may be used in any litigation, contested matter or adversary proceeding seeking to enforce the terms of this Plan. This Section 3.7(e) is intended to be applicable to each provision of the Plan and shall be included in the Confirmation Order.

See Plan, at § 3.7(e).

16.     Thus, the Plan expressly disclaimed any connection to litigation involving Yucaipa or its affiliates, including City Pension Defendants.  Moreover, as quoted above, paragraph 54 of the Confirmation Order provides that the jurisdictional provisions of the Plan will be inapplicable to Yucaipa and its affiliates and that the Plan will not modify the rights of Yucaipa or its affiliates.

7

C.      **The Yucaipa Litigation**

17.     Plaintiff prosecuted the Adversary Proceedings following confirmation of the

Plan.  On May 1, 2020, she moved for summary judgment in both actions.  See Estate Action,

D.I. 705.  On June 23, 2021, this Court issued a partial judgment (the "Judgment") on certain of

the alleged claims for relief largely favoring Plaintiff and against Yucaipa.  See Estate Action,

D.I., at 841.  Yucaipa subsequently appealed the Judgment, which appeal remains pending before

the United States District Court.  None of the defendants named in Plaintiff's Complaint are

parties to the Adversary Proceedings and none are liable on the Judgment.

18.     On May 2, 2022, the Court issued a second judgment in the Estate Action and the

Lender Action on all remaining claims for relief, this time holding in favor of Yucaipa and

against the Trustee.  See Estate Action, D.I. 1008; Lender Action, D.I. 744.


D.      **Plaintiff Sues the City Pension Defendants Under Delaware Law.**

19.     On October 6, 2021, the Trustee filed the Complaint in the present action in her

capacity as "a judgment creditor against Yucaipa."  See Complaint at ¶ 1.  Claim for Relief One

alleges that City Pension Defendants were recipients of "actual" fraudulent transfers that are

avoidable under 6 Del. C. § 1304(a)(1).  Id. at ¶ 32.  Claim for Relief Two alleges that City

Pension Defendants are recipients of "constructive" fraudulent transfers under 6 Del. C. §§

1304(a)(2) and 1305(a).  Id. at ¶ 33.  Claim for Relief Three seeks a declaratory judgment that

the General Partner of Yucaipa is liable for the debts of Yucaipa "under controlling law," and

requiring the General Partner to "seek return of Transfers to Transferee Defendants."  Id.


E.      **Plaintiff Sues the City Pension Defendants Under California Law.**

20.     On October 7, 2021, the Trustee filed a complaint against the City Pension

Defendants in the Los Angeles County Superior Court, case number 21STCV37137 (the

"California Action").  The California Action Complaint is attached hereto as Exhibit "1."  The

first cause of action in the California Action alleges that the City Pension Defendants were

8

recipients of fraudulent transfers under Cal. Civ. Code § 3439.04(a)(1).  The second and third causes of action allege that the City Pension Defendants were recipients of constructive fraudulent transfers, avoidable under Cal. Civ. Code §§ 3439.04(a)(2) and 3439.05.

## V.

## ARGUMENT

21.      Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1),[4] Plaintiff has the burden to show that the Delaware Bankruptcy Court has subject matter jurisdiction to hear the claims for relief alleged in the Complaint.  In re Sportsman's Warehouse, Inc., 457 B.R. 372, 383-384 (Bankr. D. Del. 2021); See Fairchild Liquidating Trust v. New York (In re Fairchild Corp.), 452 B.R. 525, 530 (Bankr. D. Del. 2011) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  Plaintiff has not and cannot meet that burden, requiring dismissal of the Complaint with prejudice.

### A.      The Court Lacks Subject Matter Jurisdiction

22.      A bankruptcy court's limited jurisdictional authority is derived from neither the Bankruptcy Code nor a plan of reorganization.  In re Resorts International, Inc., 372 F.3d 154, 161 (3d Cir. 2004).  Rather, a bankruptcy court's authority is derived from 28 U.S.C. §§ 1334 and 157.  Id.  Section 1334 vests in district courts (as Section 157 vests in bankruptcy courts) jurisdiction over four types of title 11 matters: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11."  Resorts, 327 F.3d at 162.

23.      The first three categories are deemed "core" proceedings, meaning that bankruptcy courts have "full adjudicative power" and can issue final judgments in those actions.

---

[4] Made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7012(b).

Id.  The fourth category, proceedings "related to" a case under Title 11, is considered a "non-core" proceeding.  Id.  In a non-core proceeding, a bankruptcy court may only submit findings of fact and conclusions of law to the district court, which then reviews the matter de novo and issues its own judgment.  Id. at 162-64.

### 1.    The Yucaipa Action is not a Core Proceeding

24.    According to Third Circuit precedent, a core proceeding is one that "invokes a substantive right provided by title 11" or "by its nature, could arise only in the context of a bankruptcy case."  Resorts, 372 F.3d at 162-63 (quoting Torkelsen v. Maggio (In re Guild & Gallery Plus)), 72 F.3d 1171, 1178 (3d Cir. 1996).  More specifically, the Third Circuit has rejected arguments that state law causes of action are core proceedings.  See In re Exide Techs., 544 F.3d 196, 207 ("Even assuming that the claims fall within the list, none — on its face — invokes a substantive right under the Bankruptcy Code.  Each claim is a state law cause of action, sounding in contract and tort.")

25.    Here, Plaintiff asserts that the Claims constitute a core proceeding.  However, all of the Claims alleged herein are based on Delaware state law, and therefore do not implicate any substantive rights established by the Bankruptcy Code.  Additionally, the Claims arise outside the context of a bankruptcy case.  The Plaintiff, a non-debtor, has brought fraudulent transfer claims against the City Pension Defendants, also non-debtors.  The only connection between the Claims and this bankruptcy case lies in the fact that the Plaintiff inherited the Claims from a bankruptcy debtor over six years ago.  Such an attenuated relationship clearly indicates that the Claims arose outside the context of bankruptcy and thus cannot constitute a "core proceeding" within the meaning of 28 U.S.C. §§ 1334 and 157.

### 2.    The Court Does Not Have "Related To" Jurisdiction Over the Claims

26.    Plaintiff's Claims are also not "related to" a case under Title 11.  Courts have found that "related to" jurisdiction exists when an adversary proceeding could have an effect on

the bankruptcy estate.  Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984, 994 (3d Cir. 1984),

overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).  That

is not the case here.

27.     Though the precise confines of "related to" jurisdiction are unclear, courts agree

that they must be limited by reasonable boundaries.  One widely adopted test states that

bankruptcy courts have jurisdiction where,

> "the outcome of that proceeding could conceivably have **any effect** on the
> estate being administered in bankruptcy."  [Citations.]  In In re Marcus Hook,
> 943 F.2d 261, we emphasized that a key word in this test is "**conceivable**" and
> that "[c]ertainty, or even likelihood, is not a requirement."  Id. at 264.  In
> Pacor, we observed: "[T]he proceeding need not necessarily be against the
> debtor or against the debtor's property.  An action is related to bankruptcy if
> the outcome could alter the debtor's rights, liabilities, options, or freedom of
> action (either positively or negatively) and which in any way impacts upon the
> handling and administration of the bankrupt estate." 743 F.2d at 994.  The
> Supreme Court has explained that the critical component of the Pacor test is
> that "bankruptcy courts have no jurisdiction over proceedings that have no
> effect on the estate of the debtor."  [Citation.]

Resorts, 372 F.3d at 164, emphasis added.

28.     However, once a plan of reorganization has been confirmed, the scope of a

bankruptcy court's jurisdiction **narrows** and the court retains "related to" jurisdiction only when

the subject action bears a "close nexus" to the bankruptcy plan or proceeding.  Resorts, 372 F.3d

at 166–67; Fairchild, 452 B.R. 525 at 531; see Triad Guar. Ins. v. Am. Home Mortg. Inv. Corp.

(In re Am. Home Mortg. Holding), 477 B.R. 517, 529-30 (Bankr. D. De. 2012) ("the test for

'related to' jurisdiction becomes more stringent if the plaintiff files its action after the

confirmation date… the plaintiff must persuade the court that the claims have a 'close nexus' to

the bankruptcy plan or proceeding").

29.     A litigation trust does not enjoy the same connection to the bankruptcy that the

estate would, and the existence of a litigation trust alone does not create a "close nexus."  See In

re PennySaver USA Publ'g, LLC, 587 B.R. 43, 52 (Bankr. D. Del. 2018) ("In a post-

confirmation context, a litigation trust or liquidating trust does not equal the estate. In fact, the

very issue with post-confirmation proceedings is that the connection to the estate all but vanishes

in the face of a plan of reorganization, where parties have purposefully and by agreement removed a debtor from court oversight.").

30.     Courts **have found** a "close nexus" when a matter "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan." Resorts at 166.  Conversely, courts have **not found** a sufficiently close nexus in post-confirmation litigation that did not involve interpretation of a plan, benefit to the debtor, or an impact on post-confirmation proceedings.  See Falise v. American Tobacco Co., 241 B.R. 48 (E.D.N.Y. 1999) (trust sued non-parties to the bankruptcy case, and resolution of the dispute would not have impacted the bankruptcy plan or proceeding); Resorts, 372 F.3d at 168-69 (finding that disputes that are "collateral" to the bankruptcy case lack a close nexus, precluding subject matter jurisdiction); Grimes v. Graue (In re Haws), 158 B.R. 965, 971 (Bankr. S.D. Tex. 1993) (damages recovered from the action were not "necessary" to effectuate the terms of the plan and the bankruptcy court was not asked to interpret the terms of the plan); Fairchild, 452 B.R. at 531 ("the potential to increase recovery for trust beneficiaries cannot be sufficient, in and of itself, to establish a close nexus because it would create a broader jurisdiction than Congress intended"); Warren v. Calania Corp., 178 B.R. 279, 282 (M.D. Fla. 1995); In re H & L Developers, Inc., 178 B.R. 71, 76 (Bankr. E.D. Pa. 1994); In re Trans American Natural Gas Corp., 127 B.R. 800 (S.D. Tex. 1991) (the possibility of recovering damages which could be used to fund a plan is collateral to the bankruptcy case and an inadequate basis to provide jurisdiction).

31.     The Resorts case provides an instructive parallel to the case at bar.  In that case, the litigation trustee for a litigation trust formed by a Chapter 11 plan of reorganization brought in bankruptcy court malpractice and breach of contract claims against an accounting firm for post-confirmation work.  Like here, that action was filed years after the court entered the confirmation order.  Resorts, 372 F.3d at 167.  The litigation trustee alleged that the accounting firm was responsible for errors that affected the allocation of assets between the trust and the reorganized debtor, harming the beneficiaries of the trust.  Id. at 158.  Although the reorganized debtor was not a party to the suit, the litigation trustee claimed that the bankruptcy court retained

12

jurisdiction over the proceeding, as the debtor's confirmed plan and litigation trust agreement

included "sweeping jurisdictional retention provisions" that allegedly provided for bankruptcy

court jurisdiction over the trust's claims.  Id.  The litigation trust agreement also assigned to the

litigation trustee "all its rights, title, and interest" to its litigation claim.  Id. at 57.

32.     The Resorts court sided with the accounting firm, finding that the litigation trust's

claims did not share a "close nexus" to the debtor's bankruptcy plan and thus the court did not

have subject matter jurisdiction over the litigation claims.  Id. at 169.  The court explained,

> [T]his proceeding lacks a close nexus to the bankruptcy plan or proceeding and
> affects only matters collateral to the bankruptcy process. The resolution of
> these malpractice claims will not affect the estate; it will have only incidental
> effect on the reorganized debtor; it will not interfere with the implementation
> of the Reorganization Plan; though it will affect the former creditors as
> Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy
> plan or proceeding because they exchanged their creditor status to attain rights
> to the litigation claims; and as stated, the jurisdictional retention plans [sic]
> cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or
> 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the
> requisite close nexus to be within the Bankruptcy Court's "related to"
> jurisdiction post-confirmation.

Id. at 169.

33.     While the court admitted that litigation trusts, by their nature, maintain a

connection to the bankruptcy after confirmation of a plan, the matter must still involve the

interpretation or enforcement of the confirmed plan in order to have the requisite close nexus.

Id. at 167.  In the court's view, the fact that the litigation trust's assets were once assets of the

estate cannot, on its own, create a close nexus sufficient to confer jurisdiction.  Id. at 169.

34.     The Resorts court rejected the argument that the bankruptcy court could rely on

provisions in the debtor's plan of reorganization to establish subject matter jurisdiction.  Id. at

161 ("Bankruptcy courts can only act in proceedings within their jurisdiction.  If there is no

jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a

plan of reorganization or trust agreement are fundamentally irrelevant,") citing Donaldson v.

Bernstein, 104 F.3d 547, 552 (3d Cir. 1997).  According to the court, the debtor's "deliberate act

to separate the litigation claims from the bankruptcy estate" by assigning all of the reorganized

13

entity's right, title, and interest in the litigation claims to the litigation trust also weakened the trustee's argument that a close nexus existed.  Id.

35.       Other courts have also held that a bankruptcy court lacks subject matter jurisdiction over proceedings similar to this one.  For example, in Faulkner v. Eagle View Capital Mgmt. (In re Heritage Org., L.L.C.), 454 B.R. 353, 356 (Bankr. N.D. Tex. 2011), a chapter 11 trustee obtained a judgment against certain fraudulent transfer defendants while the debtor's case was pending.  A chapter 11 plan was subsequently confirmed in the case and the trustee was appointed as the representative of a post-confirmation creditors' trust.  Id. at 356. The trustee, acting as a judgment creditor, filed a new complaint in the bankruptcy court asserting claims under Texas's Uniform Fraudulent Transfer Act against alleged recipients of fraudulent transfers from certain of the original defendants/judgment debtors, some of which were made prior to confirmation.  Id. at 357.

36.       Concluding that it lacked jurisdiction over the trustee's state law claims, the Faulkner court explained:

> . . . [N]o bankruptcy law will be involved in the resolution of the TUFTA claim. No facts or law deriving from the reorganization will determine the dispute. . . . [T]he Trustee is not asserting this claim by virtue of his status as Trustee of Heritage's bankruptcy estate, as he was in connection with the First Adversary Proceeding. **He is instead asserting rights as a judgment creditor — of entities who were never in bankruptcy at all**. Therefore, it cannot be said that his prosecution of the TUFTA claim asserted here was a key feature of the Heritage Plan. For example, the Trustee, as a judgment creditor of Ettman Trust, which was never in bankruptcy, is suing Treasured Investment — an entity which was also never in bankruptcy and which was not even a party to the First Adversary Proceeding — to recover property that Ettman Trust is alleged to have fraudulently transferred to Treasured Investment. The fact that the Trustee got his judgment against Ettman Trust in a bankruptcy court seems of little legal significance.
>
> Here, the TUFTA claim is merely "related to" a case under title 11, as it would have an existence outside of bankruptcy; it is not a core proceeding, and it is related to the bankruptcy in only the most general sense — really, only by the fact that the Trustee got his judgment against the non-debtors in the bankruptcy court. The TUFTA claim will involve new and different proof, beyond that already proffered during the First Adversary Proceeding — for example, the Trustee will have to prove the elements of a claim under TUFTA as to each of the Judgment Debtors. . . .

Id. at 366-67, emphasis added.

37.     Like <u>Resorts</u> and <u>Faulkner</u>, Plaintiff's present action does not enjoy a close nexus to the Bankruptcy Case.  Plaintiff alleges that Yucaipa affected a series of fraudulent transfers to various entities, including City Pension Defendants.  However, City Pension Defendants were never involved in the Bankruptcy Case and neither they nor Yucaipa are located in Delaware.  Being that Yucaipa and City Pension Defendants are located in California, any alleged transfers to City Pension Defendants appear to have occurred in California.

38.     Further, Plaintiff's claims require no interpretation or reference to the Plan.  As the Third Circuit has held, the former creditor status of the Trust's beneficiaries is irrelevant in the context of the Court's close nexus analysis, and the Trust's success or failure in this action will have no impact on the Debtor or any current Allied creditors.  The details of the Complaint and the Plan therefore do not suggest that this court has "related to" jurisdiction over the Litigation Claims.

39.     Indeed, the Plan and Complaint contain elements that refute a finding of a close nexus between the Litigation Claims and the bankruptcy Plan.  On multiple occasions, the Plan provides for assignment of the debtor's rights in the Litigation Claims to the Trust.[5]  As the <u>Resorts</u> court opined, this assignment suggests the lack of a close nexus between the Claims and the Plan.  Perhaps even more importantly, the Confirmation Order and the Plan expressly renounced any connection to litigation relating to Yucaipa or its affiliates.  See Confirmation Order, at 54; Plan, at § 3.7(e).  This proceeding has no impact on the Debtors or their estates,

---

[5] "For the avoidance of doubt, the Litigation Trust Assets shall not revest in the Reorganized Debtors. Such assets shall vest in the ASHINC Litigation Trust pursuant to Section 5.11 of the Plan." Plan, at p. 21, § 5.9.

"On the Effective Date, the Estate Claims shall vest automatically in the ASHINC Litigation Trust." Plan, at p. 23, § 5.11(b).

"The assets comprising the Litigation Trust Assets will be treated for tax purposes as being transferred by the Debtors and the First Lien Agents to the Litigation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Litigation Trust Beneficiaries to the ASHINC Litigation Trust in exchange for the Litigation Trust Interests in the ASHINC Litigation Trust."  See Plan, at p. 23, § 5.11(b).

which were terminated over six years ago through confirmation.  Under the facts of this case and controlling case law, this Court lacks "related to" jurisdiction over this proceeding, and therefore has no subject matter jurisdiction over this action.

### B.   In the Alternative, the Court Should Abstain Under 28 U.S.C. § 1334

40.    Even if the Court finds that it has subject matter jurisdiction over this action, it should still abstain from hearing this dispute under FRCP 5011 and 28 U.S.C. § 1334(c)(1) and (2), and thereby dismiss the case.

### 1.   Mandatory Abstention

41.    Mandatory abstention by a federal court is governed by 28 U.S.C. section 1334(c)(2), which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. section 1334(c)(2).

> The right to mandatory abstention is obtained by satisfying the following requirements:

> (i) the motion to abstain is timely; (ii) the action is based upon a state law claim or cause of action; (iii) an action has been commenced in state court; (iv) the action can be timely adjudicated in state court; (v) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal court absent bankruptcy; and (vi) the matter is non-core and is only "related to" a case under title 11.

In re Sportsman's Warehouse, Inc., 457 B.R. 372, 389 (Bankr. D. Del. 2021).

The purpose of mandatory abstention is to require federal courts to defer matters that can be easily resolved by state courts.  Id.

42.    All of the above elements are present in this action, requiring the Court to abstain under Section 1334(c)(2).  The deadline for a motion to abstain has not yet elapsed, as this Court extended Defendants' right to file pleadings responding to Plaintiff's Complaint to June 1, 2022.

16

The Claims are based entirely upon state law, namely the Delaware UFTA.  Concurrent with the filing of the Complaint, Plaintiff filed a nearly identical complaint in California state court, alleging similar claims under California law.

43.     Moreover, Plaintiff does not realistically have an independent basis for federal jurisdiction, as it relied on no federal laws, and the claims alleged by Plaintiff are not related to the Plan or its implementation.  Finally, assuming the Court finds that it has subject matter jurisdiction over this proceeding, this matter could only be categorized as "non-core" because: (1) Plaintiff does not raise any claims under Title 11 and (2) there is no longer a bankruptcy case for this proceeding to arise under.  Therefore, all of the requirements for mandatory abstention are met.  Plaintiff's Complaint must be dismissed on this basis alone.

### 2.      Permissive Abstention

44.     In the alternative, the Court should dismiss this action based on its permissive abstention authority.  A court may abstain from hearing a proceeding arising under or relating to Title 11.  See 28 U.S.C. section 1334(c)(1).  To determine whether abstention is appropriate, courts in this district consider the following twelve factors:

1.     The effect or lack thereof on the efficient administration of the estate;

2.     the extent to which state law issues predominate over bankruptcy issues;

3.     the difficulty or unsettled nature of the applicable state law;

4.     the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5.     the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6.     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.     the substance rather than the form of an asserted "core" proceeding;

8.      the feasibility of severing state law claims from core bankruptcy matters to allow

        judgments to be entered in state court with enforcement left to the bankruptcy

        court;

9.      the burden of the court's docket;

10.     the likelihood that the commencement of the proceeding in bankruptcy court

        involves forum shopping by one of the parties;

11.     the existence of a right to a jury trial; and

12.     the presence in the proceeding of non-debtor parties.

In re DHP Holdings II Corp., 435 B.R. 220, 223–24 (Bankr. D. Del. 2010).

45.     Of these factors, courts consider most heavily the effect on the administration on

the estate, whether the claims involve only state law issues, and whether the proceeding is core

or non-core.  Id. at 224.

46.     Each of the twelve enumerated factors weighs in favor of abstention here:

1.      **Effect on efficient administration of the estate.**  Abstention would have no

effect on the administration of the Debtors' estates.  The Plan was confirmed more than six years

ago, and the estates were terminated upon confirmation.

2.      **State law predomination.**  The Complaint is entirely composed of state law

claims.  As Plaintiff's California action suggests, the law that should govern Plaintiff's

fraudulent transfer claims against City Pension Defendants is likely the California UVTA, which

would be better heard in a California state court.  No bankruptcy or even federal law issues are

involved in this action.

3.      **Difficulty of applicable state law.**  Resolution of the fraudulent transfer claims

would require a fact-intensive inquiry regarding Yucaipa's actual intent in making the challenged

transfers, as well as complex issues of insolvency and reasonably equivalent value.  Moreover,

the claims give rise to legal defenses unique to California law, including the applicability of

statutes of limitation and possible immunities afforded to departments of a California municipality.[6]

4.      **Related proceeding in state court.**  Plaintiff filed a nearly identical complaint in California state court, alleging California state law claims.  Arguably, the California state court is the more appropriate venue for this action, as the judgment debtor and City Pension Defendants are all based in California.

5.      **Jurisdictional basis.**  Plaintiff filed nearly identical complaints in both this Court and the California state court.  Although these complaints are based on the same alleged transfers, Plaintiff asserts that City Pension Defendants violated the laws of two different states.  One can only violate a single state's fraudulent transfer statutes with the same set of transfers, meaning that either Delaware or California laws should apply to Plaintiff's claims.  Considering that Yucaipa and City Pension Defendants are both located in California and that the alleged transfers occurred in California, the most relevant fraudulent conveyance law appears to be California state law.  Thus, Plaintiff does not have a jurisdictional basis for bringing this action in this Court.

6.      **Degree of remoteness.**  As previously discussed, the Claims have no material connection to the Bankruptcy Case.  Debtor's estate no longer exists, the present proceeding does not involve any Debtor parties, and the Confirmation Order was entered over six years ago.

7.      **Substance of the proceeding.**  As discussed previously, this is not a "core" proceeding.

---

[6] "[E]ven if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding . . . this factor weighs in favor of having the state court decide it." In re Integrated Health Servs., Inc., 291 B.R. 615, 620 (Bankr. D. Del. 2003); see also Broadhollow Funding, LLC v. Bank of Am., N.A. (In re Am. Home Mortg.), 390 B.R. 120, 138 (Bankr. D. Del. 2008) (same); DHP Holdings II Corp., 435 B.R. at 227 ("Although the parties have not identified any unsettled state law issues, a state court would be better positioned to identify and resolve any such issues, should they arise. Therefore, the Court finds that this factor favors abstention.").

8. **Feasibility.**  The Claims consist solely of state law claims.  There are no bankruptcy issues.  Thus, severance is feasible.

9. **Burden on court docket.**  This litigation, which involves only non-debtor parties and state law claims first arising and asserted post-confirmation, constitutes an entirely new proceeding.  This litigation would require new discovery, motion practice, and a trial, for purposes of adjudicating non-debtors' rights under state law.  Conducting this proceeding in the bankruptcy court (for discovery) and the United States District Court (for jury trial) would be an inefficient use of judicial resources, especially when a single trial court in California could handle these claims without the need to bifurcate the action.

10. **Forum shopping likelihood.**  Plaintiff filed the Complaint shortly after this Court awarded her a large judgment against Yucaipa.  Rather than moving immediately to enforce the state law claims against third parties in appropriate forums, Plaintiff appears to be counting on continued favorable rulings in this Court, regardless of the lack of subject matter jurisdiction over the Claims.  By later filing a nearly identical complaint in California superior court, Plaintiff has effectively acknowledged that she is forum shopping to hedge her bets.

11. **Exercise of right to jury trial.**  The claims asserted in the Complaint are triable by a jury, which City Pension Defendants will ultimately demand.

12. **Presence of non-debtor parties.**  All of the parties implicated by the Complaint are non-debtor parties.

47. In sum, all factors (including the most significant ones) weigh in favor of abstention.  Thus, if the Court finds that it has subject matter jurisdiction over this proceeding, it should abstain from hearing it and dismiss the case, allowing their resolution in the California superior court.

**C.**     **Counts One and Two of the Complaint Must Be Dismissed as to the Avoidance of Transfers Made More Than Three Years Ago.**

48.     In addition to the jurisdiction issues raised above, the Court should further dismiss the First and Second Claims for relief to the extent they seek to avoid transfers that were made more than three years before this action was filed.

Section 17-607(c) of the Delaware Revised Uniform Limited Partnership Act provides:

> Unless otherwise agreed, a limited partner who receives a distribution from a limited partnership shall have no liability under this chapter **or other applicable law** for the amount of the distribution after the expiration of 3 years from the date of the distribution.

6 Del. C. § 17-607(c), emphasis added.

49.     Section 17-607(c) is a statute of repose, and as such it applies to state law claims regardless of a potential plaintiff's awareness of the alleged transfers. <u>Diamond v. Friedman (In re Century City Doctors Hospital, LLC)</u>, 466 B.R. 1, 13 (Bankr. C.D. Cal. 2012); <u>see</u> <u>Reclaimant Corp. v. Deutsch</u>, 211 A.3d 976, 987 (Conn. 2019). Importantly, section 17-607(c) supersedes the application of other relevant fraudulent transfer statutes. <u>Century City</u>, 466 B.R. at 16 ("§ 17-607(c)'s three-year bar trumps DUFTA's four-year statute of limitations in the context of an alleged wrongful distribution by a limited partnership organized under Delaware law. A contrary reading would offend the plain, unambiguous text of the statute.")

50.     The Plaintiff filed the Complaint on October 6, 2021. Any alleged transfers that occurred prior to October 6, 2018 (three years prior) are barred by Section 17-607(c). The Complaint alleges that City Pension Defendants received fraudulent transfers from Yucaipa on October 11, 2017. Complaint at ¶ 25. This date is outside the temporal parameters set by Section 17-607(c) and the Court should bar those claims accordingly.

# VI.

## JUDICIAL NOTICE

The Court may take judicial notice of the following facts pursuant to Fed. R. Evid. 201:

51.      On May 17, 2012, involuntary chapter 11 cases were commenced against Allied System Holdings, Inc. ("Allied Holdings") and Allied Systems, Ltd. (L.P.) ("Allied Systems").

52.      On June 10, 2013 Allied Holdings and Allied Systems caused seventeen direct and indirect subsidiaries of Allied Holdings (collectively, the "Debtors") to file voluntary petitions for bankruptcy.  (Bankruptcy Case No. 12-11564 (CSS) ("Main Case"), Docket Index ("D.I.") 68, 88.)

53.      On February 1, 2013, a Complaint was filed against Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively "Yucaipa") for (I) Equitable Subordination, (II) Recharacterization, (III) Breach of Contract, (IV) Specific Performance, (V) Breaches of Fiduciary Duties, (VI) Aiding and Abetting Breaches of Fiduciary Duties, (VII) Avoidance and Recovery of Avoidable Transfers, and (VIII) Disallowance of Certain Claims (the "Estate Action").  (Adversary Proceeding No. 13-50530, D.I. 1.)

54.      On March 14, 2013, an Amended Complaint for (I) Equitable Subordination, (II) Recharacterization, (III) Breach of Contract, (IV) Specific Performance, (V) Breaches of Fiduciary Duties, (VI) Aiding and Abetting Breaches of Fiduciary Duties, (VII) Avoidance and Recovery of Avoidable Transfers, and (VIII) Disallowance of Certain Claims was filed against Yucaipa in the Estate Action.  (Adversary Proceeding No. 13-50530, D.I. 76.)

55.      On November 19, 2014, BDCM Opportunity Fund, II, LP, Black Diamond CLO 2005-1 Ltd., Spectrum Investment Partners, L.P., Black Diamond Commercial Finance, L.L.C., as Co-Administrative Agent, and Spectrum Commercial Finance LLC, as Co-Administrative Agent, filed their Complaint against Yucaipa for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract (REDACTED) (the "Lender Action").  (Adversary Proceeding No. 14-50971, D.I. 1.)

56.     On December 9, 2015, the Court entered an order (the "<u>Confirmation Order</u>") confirming the Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization Proposed by the Debtors, the Committee and the First Lien Agents (the "<u>Plan</u>").  (Main Case, D.I. 3383.)

57.     Pursuant to the Confirmation Order, Catherine E. Youngman ("<u>Plaintiff</u>") was appointed as the "Litigation Trustee" of the "ASHINC Litigation Trust."  (Main Case, D.I. 3383.)

58.     On May 1, 2020, Plaintiff, in her capacity as litigation trustee for Allied Systems and Allied Holdings, submitted her Litigation Trustee's Memorandum in Support of Motion for Partial Summary Judgment in the Lender Action and Estate Action.  (Estate Action, D.I. 705; Lender Action D.I. 462.)

59.     On June 23, 2021, the Court issued a judgment against Yucaipa in the Estate Action and the Lender Action on certain of the alleged claims for relief in the total amount of $132,431,957.  (Estate Action, D.I. 841; Lender Action, D.I. 579.)

60.     On October 6, 2021, the Plaintiff filed its Complaint to (I) Avoid and Recover Avoidable Transfers, and (II) for a Declaration of Liability Against Yucaipa American Alliance Fund I, LLC, commencing Adversary Proceeding No. 21-51179.  (Adversary Proceeding No. 21-51179, D.I. 1.)

61.     On October 7, 2021, the Plaintiff filed its Complaint For: (1) Fraudulent Transfer (Cal. Civ. Code § 3439.04(a)(1)); (2) Constructive Fraudulent Transfer (Cal. Civ. Code § 3439.04(a)(2)); (3) Constructive Fraudulent Transfer – Insolvency (Cal. Civ. Code § 3439.05) against the City Pension Defendants in the Los Angeles Superior Court, case number 21STCV37137.

62.     On March 4, 2022, the LP Defendants filed their Opening Brief in Support of Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011.  (Adversary Proceeding No. 21-51179, D.I. 47.)

63.     On May 2, 2022, the Court issued a second judgment in the Estate Action and the Lender Action on all remaining claims for relief, this time holding in favor of Yucaipa and against the Trustee.  (Estate Action, D.I. 1008; Lender Action, D.I. 744.)

## VII.

## CONCLUSION

For the reasons discussed above, the City Pension Defendants respectfully request that the Court dismiss the Complaint with prejudice for lack of subject matter jurisdiction.  In the alternative, the Court should abstain from hearing this dispute based on 28 U.S.C. section 1334. If the Court determines that it has subject matter jurisdiction and declines to abstain from hearing this matter, it should dismiss counts one and two of the Complaint to the extent they seek to avoid transfers that allegedly occurred more than three years prior to the filing of the Complaint. City Pension Defendants further pray for all other relief that is appropriate and proper.

Dated: May 31, 2022                    **CROSS & SIMON, LLC**

*/s/ Kevin S. Mann*
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
1105 N. Market Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 777-4200
csimon@crosslaw.com
kmann@crosslaw.com

- and –

**DANNING, GILL, ISRAEL &
KRASNOFF, LLP**
Uzzi O. Raanan, Esq.
Zev Shechtman, Esq.
Alphamorlai L. Kebeh, Esq.
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone:     (310) 277-0077
uraanan@DanningGill.com
zs@DanningGill.com
akebeh@DanningGill.com

*Counsel for Defendants Board of Fire and
Police Pension Commissioners and Board
of Administration of the Los Angeles City
Employees' Retirement System*