# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, et al., | Case No. 12-11564 (CSS) (Jointly Administered) |
| Debtor. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS, | |
| Plaintiff, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, LLC, YUCAIPA AMERICAN MANAGEMENT, LLC, AMERICAN AIR MASTER FIXED BENEFIT PENSION PLAN TRUST, AMERICAN PRIVATE EQUITY PARTNERS II, LP, AUTOMOTIVE MACHINISTS PENSION TRUST, BOARD OF FIRE AND POLICE PENSION COMMISSIONERS OF THE CITY OF LOS ANGELES, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, COLLER PARTNERS 702 LP INCORPORATED, CLOUSE S.A., CONSOLIDATED RETIREMENT FUND, IAM PRIVATE EQUITY, LLC, ILGWU DEATH BENEFIT FUND 4, INTERNATIONAL SIF SICAV SA, LOCALS 302 & 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS – EMPLOYERS CONSTRUCTION INDUSTRY RETIREMENT TRUST, LOS ANGELES CITY EMPLOYEES' RETIREMENT SYSTEM, NATIONAL RETIREMENT FUND, NEW MEXICO STATE INVESTMENT COUNCIL, NEW MEXICO STATE INVESTMENT COUNCIL LAND GRANT PERMANENT FUND, NEW MEXICO STATE INVESTMENT COUNCIL SEVERANCE TAX PERMANENT FUND, NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, NEW YORK CITY FIRE DEPARTMENT PENSION FUND, NEW YORK CITY | Adv. Pro. No. 21-51179 (CSS) |

POLICE PENSION FUND, NORTHEAST CARPENTERS PENSION FUND, PACIFIC COAST ROOFERS PENSION PLAN, SANBA II INVESTMENT AUTHORITY, STATE STREET BANK AND TRUST COMPANY (AS TRUSTEE ON BEHALF OF AMERICAN AIRLINES MASTER FIXED BENEFIT PENSION PLAN TRUST); STEAMSHIP TRADE ASSOCIATION OF BALTIMORE, INC. – INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (AFL-CIO) PENSION FUND, TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION PENSION PLAN FOR EMPLOYEES, WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
LIMITED PARTNER DEFENDANTS' MOTION TO
STAY THE ADVERSARY PROCEEDING PENDING THE
DISPOSITION OF THE MOTION TO WITHDRAW THE REFERENCE**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................... ii

JURISDICTION AND VENUE ............................................................ 2

BACKGROUND .......................................................................... 2

    A.    The LP Defendants ............................................................ 2

    B.    Allied's Delaware Chapter 11 Cases and the Yucaipa Adversary Proceedings .. 2

    C.    The Limited Partner Adversary Proceeding ...................................... 4

    D.    The LP Defendants' Motion to Withdraw the Reference ........................... 5

    E.    Yucaipa Adversary Proceedings Trial Opinion .................................... 6

RELIEF REQUESTED ..................................................................... 7

BASIS FOR RELIEF ..................................................................... 7

    I.    The LP Defendants are Likely to Succeed on the Merits of the Motion to Withdraw the Reference ..................................................... 8

        A.    The LP Defendants are Likely to Succeed because the Adversary Proceeding is Subject to Mandatory Withdrawal ......................... 8

        B.    The LP Defendants are Likely to Succeed because the Adversary Proceeding is Subject to Permissive Withdrawal ........................ 9

    II.    The LP Defendants Will Be Irreparably Harmed Absent a Stay of the Adversary Proceeding .................................................... 13

    III.    The Plaintiff Will Not Be Harmed if the Adversary Proceeding is Stayed ... 14

    IV.    The Public Interest Weighs in Favor of Staying the Adversary Proceeding . 14

CONCLUSION ........................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Energy Dev. Corp. v. Columbia Gas Transmission Corp. (In re Columbia Gas
  Sys., Inc.),
  134 B.R. 808 (D. Del. 1991)..................................................................9

Homeland Stores, Inc. v. Burris, et al. (In re Homeland Stores, Inc.),
  204 B.R. 427 (D. Del. 1997)................................................................11

In re Summit Glob. Logistics, Inc.
  Adv. Pro. No. 08-01241-DHS, 2008 WL 5953690 (Bankr. D.N.J. Dec. 1,
  2008) .................................................................................................8

Michaelson v. Golden Gate Private Equity, Inc., et al. (In re Appleseed's
  Intermediate Holdings, LLC),
  No. 11-807 (JEI/KM), 2011 WL 6293251 (D. Del. Dec. 15, 2011)................................10, 12

Miller v. Vigilant Ins. Co. (In re Eagle Enters.),
  259 B.R. 83 (Bankr. E.D. Pa. 2001) ....................................................8

In re Petition of McMahon,
  222 B.R. 205 (S.D.N.Y 1998)..............................................................11

In re Pruitt,
  910 F.2d 1160 (3d Cir. 1990)...............................................................10

Schlein v. Golub (In re Schlein),
  188 B.R. 13 (E.D. Pa. 1995) ................................................................13

Shubert v. Julius Kraft Co. (In re Winstar Commc'ns, Inc.),
  321 B.R. 761 (D. Del. 2005)................................................................10

Steiner Elec. Co. v. Cent. States, Southwest and Southwest Area Pension Fund,
  No. 95 C 687, 1995 WL 399517 (N.D. Ill. June 29, 1995) ...................11

**STATUTES**

6 Del. C. § 1304(a)(1) ...............................................................................5

6 Del. C. § 1304(a)(2) ...............................................................................5

6 Del. C. § 1305(a)....................................................................................5

28 U.S.C. § 157(a) ...................................................................................................2

28 U.S.C. § 157(b) ...................................................................................................2

28 U.S.C. § 157(d) ...................................................................................1, 6, 8, 12

28 U.S.C. § 1334(b) .................................................................................................2

28 U.S.C. 1409 ........................................................................................................2

**RULES**

Fed. R. Bankr. P. 5011(c) ..............................................................................1, 6, 7, 8

Del. Bankr. L. R. 5011-1 ..........................................................................................1

Del. Bankr. L. R. 9013-1(f) ......................................................................................2

**REGULATIONS**

P.L.R. 9109051 ......................................................................................................14

The group of limited partner defendants (the "LP Defendants")[1] in the above-captioned adversary proceeding (the "Adversary Proceeding"), by and through their joint undersigned counsel, respectfully submit this memorandum of law in support of the motion to stay the Adversary Proceeding (together, the "Stay Motion"), pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 5011-1 of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "Local Rules"), pending the disposition of the *LP Defendants' Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011* [D.C. Del. D.I. 1][2] (together with the brief in support thereof, the "Motion to Withdraw the Reference"),[3] currently pending before the United States District Court for the District of Delaware (the "District Court").  In support of the Stay Motion, the LP Defendants respectfully state as follows:

---

[1]     The LP Defendants are American Private Equity Partners II, LP, American Airlines Master Fixed Benefit Pension Plan Trust, California Public Employees' Retirement System, Carpenters Pension Trust for Northern California, Clouse S.A., acting in respect of Compartment 11, Coller Partners 702 LP Incorporated, Consolidated Retirement Fund, IAM Private Equity, LLC, ILGWU Death Benefit Fund 4, International SIF SICAV SA, Locals 302 & 612 Of The International Union Of Operating Engineers – Employers Construction Industry Retirement Trust, National Retirement Fund, New Mexico State Investment Council, New Mexico State Investment Council Land Grant Permanent Fund, New Mexico State Investment Council Severance Tax Permanent Fund, New York City Employees' Retirement System, New York City Fire Department Pension Fund, New York City Police Pension Fund, Northeast Carpenters Pension Fund, Pacific Coast Roofers Pension Plan, Steamship Trade Association of Baltimore, Inc. – International Longshoremen's Association (AFL-CIO) Pension Fund, Teachers' Retirement System of the City of New York, Sanba II Investment Company, State Street Bank and Trust Company (as Trustee on behalf of American Airlines Master Fixed Benefit Pension Plan Trust), United Food and Commercial Workers International Union Pension Plan for Employees, and Western Conference of Teamsters Pension Trust.

[2]     Citations to "D.C. Del. D.I. __" refer to ECF documents filed in District Court Action (defined below), Civil Action No. 22-cv-302-CFC (D. Del.).

[3]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion to Withdraw the Reference.

1

## JURISDICTION AND VENUE

1.      This Court is alleged to have jurisdiction over this Adversary Proceeding and the Stay Motion pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  Venue is proper in this District under 28 U.S.C. § 1409.  The LP Defendants deny that this Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (2) for the reasons set forth in their Motion to Withdraw the Reference currently pending before the District Court.

2.      For the avoidance of doubt, nothing in this jurisdictional statement waives, or may be construed to waive, any of the LP Defendants' arguments or defenses that this Court lacks personal jurisdiction over any LP Defendant or subject matter jurisdiction over any claim now or hereafter asserted in this Adversary Proceeding.

## BACKGROUND

### A.    The LP Defendants

3.      The LP Defendants are limited partners of Yucaipa American Alliance Fund I, L.P. ("Fund I") and/or Yucaipa American Alliance (Parallel) Fund I, L.P. (the "Parallel Fund" and together with Fund I, "Yucaipa") pursuant to limited partnership agreements entered into as of March 4, 2005 (as amended from time to time, the "LPAs").

### B.    Allied's Delaware Chapter 11 Cases and the Yucaipa Adversary Proceedings

4.      Following the filing of an involuntary chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on May 17, 2012, ASHINC Corp. and its debtor affiliates (collectively, "Allied") consented to the entry of orders for relief (the "Delaware Chapter 11 Case").[4]

---

[4]    Citations to "Del. Chapter 11, D.I. __" refer to ECF documents filed in the Delaware Chapter 11 Case, Lead Case No. 12-11564 (Bankr. D. Del.).

5.      During the Delaware Chapter 11 Case, two adversary proceedings (the "Yucaipa Adversary Proceedings") were filed by (a) the Official Committee of Unsecured Creditors of Allied (the "Committee"), asserting estate claims against Yucaipa and former Allied directors, and (b) certain of Allied's senior secured lenders, asserting direct claims against Yucaipa, former Allied directors, and others.[5]  Compl. ¶ 95.[6]  The plaintiffs' claims in the Yucaipa Adversary Proceedings were asserted in connection with Yucaipa's role as one of Allied's senior secured lenders, and sought damages for, among other things, Yucaipa's alleged breach of Allied's first lien debt documents, avoidance and recovery of allegedly fraudulent transfers, Yucaipa's alleged breaches of fiduciary duties, and the equitable subordination of Yucaipa's first lien debt claim. Compl. ¶ 96.

6.      Through the Bankruptcy Court's order confirming Allied's chapter 11 plan,[7] which became effective on December 20, 2016, Catherine E. Youngman was appointed as Litigation Trustee and Plan Administrator in the Delaware Chapter 11 Case and was substituted as plaintiff in both Yucaipa Adversary Proceedings, which would thereafter be prosecuted jointly in a single action.[8]

---

[5]    The Yucaipa Adversary Proceedings are administered under Del. Adv. Pro. No. 13-50530. Citations to "Yucaipa Adv. Pro., D.I. __" refer to ECF documents filed in the Yucaipa Adversary Proceedings.

[6]    Unless otherwise indicated, citations to the Complaint refer to the Complaint in this Adversary Proceeding.

[7]    Del. Chapter 11, D.I. 3383.

[8]    Yucaipa Adv. Pro., D.I. 415.

7.     On May 4, 2021, the Bankruptcy Court entered an Opinion and Order (the "2021 SJ Opinion")[9] granting in part and denying in part competing motions for summary judgment filed by the Plaintiff (defined below) and Yucaipa in the Yucaipa Adversary Proceedings.  On June 23, 2021, the Bankruptcy Court entered judgment against Yucaipa pursuant to the 2021 SJ Opinion, awarding damages for breach of contract and the avoidance and recovery of certain fraudulent transfers totaling $132,431,957 (including more than $60 million of pre-judgment interest), plus post-judgment interest (the "Judgment").[10]  On July 6, 2021, Yucaipa filed a Notice of Appeal[11] from the 2021 SJ Opinion and Judgment, which remains pending before District Court Judge Colm F. Connolly at Civil Action Nos. 21-cv-994 and 995 ("Yucaipa's 2021 Appeal").

8.     Following the entry of the Judgment, the primary claims remaining for trial in the Yucaipa Adversary Proceedings included equitable subordination of Yucaipa's first lien debt and alleged breach of fiduciary duty.  The Court scheduled the trial on the Plaintiff's remaining claims for March of 2022.

### C.    The Limited Partner Adversary Proceeding

9.     On October 6, 2021, Catherine E. Youngman, in her capacity as the Litigation Trustee for Allied (the "Plaintiff"), commenced the Adversary Proceeding by filing the *Litigation Trustee's Complaint to (I) Avoid and Recover Avoidable Transfers, and (II) for a Declaration of Liability Against Yucaipa American Alliance Fund I, LLC* [D.I. 1] (the "Complaint") against thirty-one defendants (together, the "Defendants"), including the LP Defendants.

10.    Between October 6, 2021 and October 14, 2021, the Plaintiff filed eight additional actions against certain of the Defendants, based on the same allegations and theories as the

---

[9]    Yucaipa Adv. Pro., D.I. 825, 826.

[10]   Yucaipa Adv. Pro., D.I. 841.

[11]   Yucaipa Adv. Pro., D.I. 858.

Complaint, in the Superior Court of the District of Columbia, and in California, Maryland, Massachusetts, New Jersey, New Mexico, New York, and Washington state courts.

11.     The Complaint alleges that Yucaipa transferred approximately $379.7 million to the Defendants between October 2017 and May 2019 (the "Transfers") in an attempt to render itself judgment proof in the Yucaipa Adversary Proceedings.  Compl. ¶¶ 130–138. The Complaint contains three counts under Delaware state law, as follows:

Count I:     to avoid and recover the Transfers as actual fraudulent transfers pursuant to the Uniform Fraudulent Transfer Act (the "UFTA"), 6 Del. C. § 1304(a)(1);

Count II:    to avoid and recover the Transfers as constructively fraudulent transfers pursuant to the UFTA, 6 Del. C. §§ 1304(a)(2) and 1305(a); and

Count III:   a declaratory judgment that the General Partner is liable for the debts of Yucaipa and requiring the General Partner to seek the return of the Transfers to satisfy any obligations that Yucaipa has, or may in the future incur, to the Plaintiff.

12.     The LP Defendants, among certain other defendants (together, the "Non-Yucaipa Defendants") and the Plaintiff, entered into several stipulations extending the deadline to respond to the Complaint, which stipulations were approved by the Bankruptcy Court pursuant to Orders dated December 2, 10, and 26, 2021 [D.I. 9, 21 and 23], February 11, 2022 [D.I. 40], and March 3 [D.I. 44].

13.     On April 12, 2022, the Bankruptcy Court entered an order approving a stipulation (the "Extension Stipulation") further extending the Non-Yucaipa Defendants' deadline to respond to the Complaint to 30 days following the earlier of (i) written notice by the Plaintiff, and (ii) the Bankruptcy Court's issuance of a post-trial opinion (the "Trial Opinion") in the Yucaipa Adversary Proceedings [D.I. 59].

**D.     The LP Defendants' Motion to Withdraw the Reference**

14.     On March 4, 2022, the LP Defendants filed the Motion to Withdraw the Reference. The Motion to Withdraw the Reference was subsequently transmitted to the District Court and

assigned to Judge Colm F. Connolly at Civil Action No. 22-cv-302-CFC (the "District Court Action").

15.    On May 2, 2022, the Plaintiff filed the *Response of Catherine E. Youngman, in Her Capacity as the Litigation Trustee and Plan Administrator for ASHINC Corporation, to the LP Defendants' Motion to Withdraw the Reference Pursuant to 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011* [D.C. Del. D.I. 9] (the "Response"), and on May 24, 2022, the LP Defendants filed their reply in further support of the Motion to Withdraw the Reference [D.C. Del. D.I. 16] (the "Reply").  As of the date hereof, the District Court has not scheduled a hearing date or issued a decision on the LP Defendants' Motion to Withdraw the Reference.

###    E.    Yucaipa Adversary Proceedings Trial Opinion

16.    On May 2, 2022, this Court issued its Trial Opinion in the Yucaipa Adversary Proceedings, holding that, *inter alia*, Plaintiff is not entitled to a recovery on account of her remaining claims against Yucaipa due to her failure to prove any compensable damages at trial.

17.    On May 12, 2022, the Plaintiff filed a Notice of Appeal[12] seeking a review of the Bankruptcy Court's Trial Opinion (the "Plaintiff's Trial Opinion Appeal").[13]  As a result of the Plaintiff's Trial Opinion Appeal, as well as Yucaipa's 2021 Appeal, *all* disputes between the Plaintiff and Yucaipa are presently awaiting resolution before Judge Connolly in the District Court.

18.    Under the terms of the Extension Stipulation, the Trial Opinion, issued on May 2, 2022, triggered the Non-Yucaipa Defendants' current June 1, 2022 deadline to respond to the Complaint in this Adversary Proceeding.

19.    On the date hereof, the LP Defendants filed their *Memorandum of Law in Support*

---

[12]    Yucaipa Adv. Pro., D.I. 1010.

[13]    The Plaintiff's Trial Opinion Appeal is pending before the District Court at Civil Action No. 22-cv-634.

*of the Limited Partner Defendants' Motion to Dismiss Adversary Complaint* (the "Motion to
Dismiss").

### RELIEF REQUESTED

20.    By this Stay Motion, the LP Defendants request entry of an order pursuant to
Bankruptcy Rule 5011(c) and Local Rule 5011-1, substantially in the form of the proposed order
submitted herewith (the "Proposed Order"), staying the Adversary Proceeding pending the
disposition of the Motion to Withdraw the Reference, which is currently pending before the
District Court.  For the avoidance of doubt, the LP Defendants do not seek a stay of their deadline
to file a motion or pleading in response to the Complaint (or of any other party's deadline(s) to file
responsive pleadings in connection with the LP Defendants' Motion to Dismiss), but *do* request:
(i) that the Adversary Proceeding be stayed immediately upon the close of briefing in connection
with the Motion to Dismiss filed by the LP Defendants, and (ii) that the Bankruptcy Court refrain
from hearing or determining any of the issues presented in connection with the Motion to Dismiss
filed by the LP Defendants pending the District Court's issuance of a decision on the Motion to
Withdraw the Reference.

### BASIS FOR RELIEF

21.    Bankruptcy Rule 5011(c) provides, in relevant part, that "[t]he filing of a motion
for withdrawal of a case or proceeding . . . shall not stay the administration of the case or any
proceeding therein before the bankruptcy judge *except* that the bankruptcy judge may stay, on such
terms and conditions as are proper, proceedings pending the disposition of the motion." Fed. R.
Bankr. P. 5011(c) (emphasis added).

22.    In determining whether to grant a stay pending the disposition of a motion to
withdraw the reference, courts consider the following four factors: (1) the likelihood that the

movant will prevail on the merits of the motion to withdraw the reference; (2) the likelihood that the movant will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.  See In re Summit Global Logistics, Inc., Adv. Pro. No. 08-01241-DHS, 2008 WL 5953690, at *2 (Bankr. D.N.J. Dec. 1, 2008); Miller v. Vigilant Ins. Co. (In re Eagle Enters.), 259 B.R. 83, 86–87 (Bankr. E.D. Pa. 2001); 9 Collier on Bankruptcy ¶ 5011.03[b] (16th 2021).   In this case, each of the factors weighs decidedly in favor of granting the LP Defendants' Stay Motion.

**I.      The LP Defendants are Likely to Succeed on the Merits of the Motion to Withdraw the Reference**

23.      The LP Defendants are likely to succeed on the merits of the Motion to Withdraw the Reference.  As set forth in more detail in the Motion to Withdraw the Reference,[14] the Adversary Proceeding is subject to mandatory withdrawal.  Further, even in the event the District Court finds the Adversary Proceeding is not subject to mandatory withdrawal, there is an overwhelming argument that "good cause" has been demonstrated to warrant permissive withdrawal.  Each of these points is addressed briefly below.

**A.      The LP Defendants are Likely to Succeed because the Adversary Proceeding is Subject to Mandatory Withdrawal**

24.      The test in the Third Circuit for whether mandatory withdrawal of the reference is required under 28 U.S.C. § 157(d) is whether substantial and material consideration (as opposed to simple application) of a law of the United States regulating organizations or activities affecting interstate commerce outside of the Bankruptcy Code is necessary for the resolution of the proceeding.  See, e.g., Energy Dev. Corp. v. Columbia Gas Transmission Corp. (In re Columbia

---

[14]    The LP Defendants expressly incorporate by reference herein their Motion to Withdraw the Reference and their Reply in further support thereof, and respectfully submit that they have a substantial likelihood of success on the merits for the reasons set forth therein (and herein).

Gas Sys., Inc.), 134 B.R. 808, 810-11 (D. Del. 1991). In the Adversary Proceeding, the Plaintiff

is pursuing, *inter alia*, non-core state law fraudulent transfer claims against the LP Defendants. Of

the twenty-six LP Defendants, twelve are ERISA[15]-governed pension and benefit plans that are

subject to, and enjoy the expansive protections of, the federal ERISA regulatory framework.

25.     Significantly, notwithstanding the Plaintiff's assertion that the ERISA anti-

alienation defense "can be rejected by 'simple application' of settled law to the facts",[16] Plaintiff

has disproven her own proposition through her citations to inapposite cases from the First Circuit,

the Second Circuit, the District of Maryland, and the District of New Mexico in an empty attempt

to demonstrate the "well-settled" status of Third Circuit law interpreting ERISA. The fact is that

the relevant law involving ERISA is anything but well-settled in the Third Circuit. For these

reasons and others, substantive consideration of any ERISA-based defenses to the Complaint will

play a central role in resolving the Adversary Proceeding.[17] Accordingly, because the Adversary

Proceeding is subject to mandatory withdrawal, the LP Defendants are likely to succeed on the

merits of the Motion to Withdraw the Reference.

**B.      The LP Defendants are Likely to Succeed because the Adversary Proceeding is Subject to Permissive Withdrawal**

26.     A threshold issue for a court in deciding whether to grant permissive withdrawal is

whether the proceeding contains core or non-core matters. See Michaelson v. Golden Gate Private

Equity, Inc., et al. (In re Appleseed's Intermediate Holdings, LLC), No. 11-807 (JEI/KM), 2011

WL 6293251, at *2 (D. Del. Dec. 15, 2011) ("[T]he determination of whether the claims are core

or non-core guides a cause analysis and, therefore, must be considered preliminary."). In this

---

[15]    Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001, *et seq.* ("ERISA").

[16]    D.C. Del. D.I. 9, at 10.

[17]    Needless to say, multiple defenses exist and will form the basis for the LP Defendants' Motion to Dismiss, none of which relate to any aspect of the Bankruptcy Code or the Delaware Chapter 11 Case. The LP Defendants reserve all of their rights in that regard.

Adversary Proceeding, the Plaintiff asserts **non-bankruptcy state law claims**, premised on alleged facts that occurred **years after confirmation** of Allied's chapter 11 plan, which involve only **non-debtor** parties, and which are **completely independent of the Bankruptcy Code** and bankruptcy law.  Therefore, as a threshold matter, it cannot be disputed that the Adversary Proceeding contains only non-core claims, as more fully described in the Motion to Withdraw the Reference.

27.     The Third Circuit has set forth five factors that a district court should consider in determining whether 'cause' exists for permissive withdrawal.   These factors include: (i) promoting uniformity of bankruptcy administration; (ii) reducing forum shopping and confusion; (iii) fostering economical use of debtor/creditor resources; (iv) expediting the bankruptcy process; and (v) the timing of the request for withdrawal." Shubert v. Julius Kraft Co. (In re Winstar Commc'ns, Inc.), 321 B.R. 761, 763–64 (D. Del. 2005) (citing In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990)). Each of these factors favors permissive withdrawal and is discussed, in turn, below.

28.     **Uniformity of Bankruptcy Administration**. As set forth above and in more detail in the Motion to Withdraw the Reference, the Adversary Proceeding only involves claims that are completely independent of the Bankruptcy Code and bankruptcy law—for instance, state law claims that are asserted under Delaware's version of the UFTA, and premised on alleged post-confirmation, non-debtor conduct. The resolution of the Adversary Proceeding will require no analysis of substantive or procedural bankruptcy law whatsoever, and is therefore entirely unrelated to any issue of uniform bankruptcy administration.

29.     **Forum Shopping**. The LP Defendants' request to withdraw the reference is not an attempt to engage in forum shopping; rather, it reflects the LP Defendants' interest in having the Adversary Proceeding adjudicated in accordance with Congress's intentions, by the court that is

best-positioned to decide the key issues presented in the Adversary Proceeding vis a vis the LP Defendants.  See In re Petition of McMahon, 222 B.R. 205, 208 (S.D.N.Y 1998) ("Forum shopping would not be encouraged by granting the Defendant's motion as this case . . . could have and probably should have been brought in the district court originally"); Steiner Elec. Co. v. Cent. States, Southwest and Southwest Area Pension Fund, No. 95 C 687, 1995 WL 399517, at *6 (N.D. Ill. June 29, 1995) ("Congress intended the federal courts to participate in the development of the ERISA statute . . . ").  Moreover, as noted above, all Yucaipa-related litigation is now pending in appeals before the District Court.

30.     **Economical Use of Debtor/Creditor Resources**. As to the third factor for permissive withdrawal, "Congress did not intend the Bankruptcy Courts, which have sharpened their expertise in a specialized body of law, to be flooded with non-chapter 11 disputes that have such a tenuous relationship to a bankruptcy proceeding." Homeland Stores, Inc. v. Burris, et al. (In re Homeland Stores, Inc.), 204 B.R. 427, 434 (D. Del. 1997).  The Adversary Proceeding asserts only non-core claims under state law that arose years after confirmation, making it more judicially efficient for the Adversary Proceeding to be adjudicated by the District Court. Indeed, courts within this District have found that when dealing with non-core claims, withdrawal of the reference serves to preserve the parties' resources. See Appleseed's, 2011 WL 6293251, at *3 (granting motion to withdraw reference of adversary proceeding, finding that proceeding in district court would preserve the parties' resources because "parties will not have to expend resources on non-core claims in Bankruptcy Court only for the Bankruptcy Judge to 'propose[ ] findings of fact and conclusions of law to the district court' subject to *de novo* review.").

31.     **Expediting the Bankruptcy Process**. In analyzing whether to withdraw the reference in a post-confirmation adversary proceeding that remains in its earliest stage, the

Delaware District Court has recognized the potential for a withdrawal of the reference to expedite the bankruptcy process.  As the In re Appleseed's Intermediate Holdings, LLC Court observed,

> withdrawing the reference now will expedite the bankruptcy process.  The parties can skip the Bankruptcy Court and proceed directly in this Court, which will eliminate a round of appeals.  Furthermore, the reorganization process has already been completed, which only leaves litigation over state law claims.  The District Court, perhaps even more so than the Bankruptcy Court, has the expertise to efficiently dispose of adversarial litigation.

Id. at *3.  The legal reasoning and practical logic articulated in the Appleseed's decision is fully applicable to the circumstances of the Adversary Proceeding.

32.    Conversely, as noted above, the Plaintiff's Trial Opinion Appeal, as well as Yucaipa's 2021 Appeal (i.e., *all* live disputes between the Plaintiff and Yucaipa) are presently awaiting resolution by the District Court. Under these circumstances, particularly when taken in conjunction with Judge Sontchi's impending retirement this month, it would defy logic to argue that having this Adversary Proceeding heard in the Bankruptcy Court before a successor judge that is unfamiliar with the procedural history and prior rulings in the Chapter 11 case and the post-confirmation litigation would promote the conservation of judicial resources or otherwise expedite the bankruptcy process.

33.    **Timeliness of Request for Withdrawal.**  "A §157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding."  Schlein v. Golub (In re Schlein), 188 B.R. 13, 14 (E.D. Pa. 1995).  Here, the Complaint is the original complaint in the Adversary Proceeding and the LP Defendants' Motion to Withdraw the Reference was filed well in advance of the deadline to respond to the Complaint.  Thus, the Motion to Withdraw the Reference was timely because it was made at the first reasonable opportunity that the LP Defendants had notice of both mandatory and permissive grounds for withdrawal of the reference.  Accordingly, the LP

Defendants have established sufficient cause, based upon each of the five factors, in favor of permissive withdrawal.

34.     Thus, even if the District Court finds withdrawal of the Adversary Proceeding is not mandatory (which the LP Defendants believe it is), permissive withdrawal is clearly appropriate.  As the LP Defendants are likely to succeed on the merits of the Motion to Withdraw the Reference, this factor weighs in favor of the Bankruptcy Court staying the Adversary Proceeding pending the disposition of the Motion to Withdraw the Reference.

## II.    The LP Defendants Will Be Irreparably Harmed Absent a Stay of the Adversary Proceeding

35.     The LP Defendants would be irreparably harmed if this Stay Motion were to be denied and the Adversary Proceeding permitted to proceed in this Court beyond the Motion to Dismiss briefing.  First, as noted above, the deadline for the LP Defendants to respond to the Complaint is June 1, 2022, and the briefing on the Motion to Withdraw the Reference closed on May 24, 2022.[18]   However, the District Court has not scheduled a hearing or provided any indication of when a decision with respect to the Motion to Withdraw the Reference may be forthcoming.

36.     Absent a stay of the Adversary Proceeding, the LP Defendants may be forced to expend significant resources litigating in both this Court and the District Court—which would become an exercise in futility in the event the Motion to Withdraw the Reference is granted. Moreover, the briefing deadlines for the Motion to Dismiss and the Motion to Withdraw the Reference are such that, absent a stay, this Court, and, more specifically, a new bankruptcy judge assigned to oversee the Adversary Proceeding, having no prior involvement in the Delaware Chapter 11 Case, could potentially rule on the Motion to Dismiss prior to the issuance of the

---

[18]    D.C. Del. D.I. 6.

District Court's ruling on the Motion to Withdraw the Reference.  Accordingly, this Court should stay the Adversary Proceeding as requested in the Stay Motion, pending a ruling by the District Court on the Motion to Withdraw the Reference to avoid wasting judicial resources as well as the resources of the parties.

### III.    The Plaintiff Will Not Be Harmed if the Adversary Proceeding is Stayed

37.    The Plaintiff will not be harmed if the Adversary Proceeding is stayed.  At this stage, when motions to dismiss have yet to be fully briefed, heard or decided, the Adversary Proceeding is in its infancy.  In fact, the Plaintiff will *benefit* by not having to litigate in multiple courts, thus preserving the Allied estate's assets.  As such, this factor weighs in favor of staying the Adversary Proceeding pending the District Court's disposition of the Motion to Withdraw the Reference.

### IV.    The Public Interest Weighs in Favor of Staying the Adversary Proceeding

38.    As discussed above and as described more fully in the Motion to Withdraw the Reference, twelve of the LP Defendants are ERISA-governed pension and benefit plans.  ERISA's legislative history explains that the purpose underlying its anti-alienation provision is to protect pension benefits "against the claims of general creditors," and to "further ensure that the employee's accrued benefits are actually available for retirement purposes."  P.L.R. 9109051 (citing H.R. Rep. 1280, 93rd Cong., 2d Sess. 280 (1974); H.R. Rep. 807, 93rd Cong. 2d Sess. 68 (1974)).  The determination of the ERISA-based issues in this matter will have a significant impact on other adversary proceedings pending before the Bankruptcy Court, the District Court, and other courts across the country.

39.    Additionally, the interest of conservation of judicial resources weighs in favor of staying the Adversary Proceeding pending the disposition of the Motion to Withdraw the

Reference by the District Court.  As noted above, all matters concerning the litigation between Yucaipa and the Plaintiff have been completed and are now currently on appeal before the District Court.  Consideration of the Adversary Proceeding by the District Court would effectively consolidate all matters relating to Yucaipa before a single court, as opposed to having a newly assigned Bankruptcy Court judge responsible for the recently filed Adversary Proceeding.

40.    Because there have been no substantive proceedings in connection with the Adversary Proceeding, a stay would help to ensure the entirety of the Adversary Proceeding can be heard in the District Court.  On the particular facts of this case, the interest of conserving judicial resources is best served by withdrawing the reference of the Adversary Proceeding in its entirety and having all proceedings take place in the District Court, which is better situated to handle the type of non-core claims asserted in the Complaint.  For the reasons stated herein, staying the Adversary Proceeding will promote the most efficient outcome in this Adversary Proceeding. Accordingly, the public interest weighs in favor of staying the Adversary Proceeding pending the disposition of the Motion to Withdraw the Reference by the District Court.

## **CONCLUSION**

WHEREFORE, the LP Defendants respectfully request that the Bankruptcy Court enter an order, substantially in the form of the Proposed Order, staying the Adversary Proceeding immediately upon the close of briefing in connection with the LP Defendants' Motion to Dismiss, and pending the disposition of the Motion to Withdraw the Reference by the District Court.

*[Signature Page Follows]*

Dated: June 1, 2022                            Respectfully submitted,

                                               **BAYARD, P.A.**

                                               */s/ Erin R. Fay*
                                               Erin R. Fay (No. 5268)
                                               Gregory J. Flasser (No. 6154)
                                               600 N. King Street, Suite 400
                                               P.O. Box 25130
                                               Wilmington, DE 19899
                                               Telephone: (302) 429-4242
                                               Email: efay@bayardlaw.com
                                                       gflasser@bayardlaw.com

                                               -and-

                                               Michael Etkin, Esq. (*pro hac vice*)
                                               Andrew Behlmann, Esq. (*pro hac vice*)
                                               Nicole Fulfree, Esq. (*pro hac vice*)
                                               Scott Cargill, Esq. (*pro hac vice*)
                                               Colleen Restel, Esq. (*pro hac vice*)
                                               **LOWENSTEIN SANDLER LLP**
                                               One Lowenstein Drive
                                               Roseland, NJ  07068
                                               Telephone:  (973) 597-2500
                                               Email: metkin@lowenstein.com
                                                       abehlmann@lowenstein.com
                                                       nfulfree@lowenstein.com
                                                       scargill@lowenstein.com
                                                       crestel@lowenstein.com

                                               *Counsel to the LP Defendants*